# VOLKMAR STREET, PHILADELPHIA.

## CERTIORARI TO THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued January 28, 1889—Decided February 25, 1889.

*(a)* In 1880, Volkmar street, Philadelphia, was ordered to be opened under the act of March 6, 1820, 7 Sm. L. 265, which provided : " That no such street, road, lane or alley so laid out, shall be opened and appropriated to public use, until the owner or owners of the ground, through and over which the same may pass, shall have been compensated for any damage he or they may sustain thereby."

*(b)* In 1888, the order remaining unexecuted, a property owner presented his petition to the Court of Quarter Sessions for the appointment of a jury of view for the ascertainment of damages, which petition on rule granted was afterward quashed upon the ground that it was filed more than six years after the order to open was awarded.

1. In such case, as between the city and the property owner, no right of action accrued until some act was done, or notice or demand made, affecting or relating to the possession or appropriation of the land to the actual opening of the street : wherefore, the order quashing the proceedings was affirmed, not because the statute of limitations had already barred the demand, but because the right had not yet accrued.

2. The question, whether the property owner might give notice of his intention to abandon to the city the land covered by the plotted street, and then proceed to have his damages ascertained and paid, is not raised upon the record and is therefore not decided.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 225 July Term 1888, Sup. Ct.; court below, No. 5 April Term 1888, Q. S.

On June 8, 1877, a petition was filed setting forth "that there is public occasion to open Volkmar street through to Palmer street, of the same width as the said street is now opened on the east side of Hanover street;" whereupon a jury of view was appointed whose report in favor of opening the street and assessing damages and benefits was filed on November 30, 1877. Exceptions were made to the report and it was set aside.

## Statement of Facts.

On September 17, 1880, another petition for the opening of said street was filed, under the act of March 6, 1820, 7 Sm. L. 265, relating to the opening of streets in the District of Kensington, where the street in question was located, which act provides a special method of procedure and contains the limitation: " Provided always, that no such street, road, lane, court, or alley so laid out, shall be opened and appropriated to public use, until the owner or owners of the ground, through and over which the same may pass, shall have been compensated for any damage he or they may sustain thereby."

Proof of service of notice on all the owners through whose lands the said street, between Hanover and Palmer streets, passed, of the application to open the same having been filed, and no one appearing to object thereto, on October 16, 1880, it was ordered that Volkmar street be opened according to law as plotted upon the official plans, and the chief commissioner of highways was directed to open the same forthwith.

On December 1, 1880, a petition was filed reciting the decree of August 16th, and praying for a jury of view to assess damages. This jury reported on February 4, 1882, and on exceptions filed their report was set aside.

The street remained unopened, and nothing further was done until April 14, 1888, when J. G. Maier presented his petition, reciting the order of October 16, 1880, and setting forth that he was the owner of real estate on the line of said street which would be taken by the opening thereof as the same had been ordered; that he had not released his right to damages which would be sustained thereby, or dedicated his land for a highway thereon, and praying for the appointment of a jury and the assessment of the damages " which he will sustain by the opening of said street." Viewers were appointed.

On May 16, 1888, upon the motion of the city solicitor, a rule upon the petitioner was granted to show cause why his petition should not be quashed, on the ground that it was not filed within six years after the order of October 16, 1880, directing the opening of the street, was made; and on June 8, 1888, the court, BIDDLE, J., no opinion being filed, made the rule absolute.

Thereupon the petitioner took this writ assigning as error:

1. The order of June 8, 1888, making absolute the rule to show cause why the petition should not be quashed.

2. The order quashing the petition for the reason that it had not been filed within six years from the date of the order of October 16, 1880.

*Mr. Joseph L. Tull*, for the plaintiff in error:

1. The act of March 6, 1820, 7 Sm. L. 265, providing for the opening of certain streets in the then district of Kensington, is but a transcript of the act March 22, 1813, 6 Sm. L. 43, providing for the opening of streets in the then district of Spring Garden, and the system yet forms part of the street law of Philadelphia: Parrish St., 6 W. N. 215. Both acts provide that damages may be ascertained as provided by the act of April 3, 1804, 4 Sm. L. 198, which act after providing that the Court of Quarter Sessions shall have power to open streets, lanes and alleys, further directs that the same "thenceforth shall be deemed and allowed to be a public street, lane or alley, compensation being first made to the owner of the ground or other property." By the petition it appears that Volkmar street is yet unopened.

2. Prior to the new constitution, the statutory limitation imposed on a property owner who sought to recover damages for the opening of a street, was fixed by § 7, act of June 13, 1836, P. L. 555. This limitation was abrogated, however, by § 21, article III. of the constitution: Grape Street, 103 Pa. 122. Even if this were not so, the limitation of the act of 1836, did not apply to the proceedings to open Volkmar street: Parrish St., 6 W. N. 215 ; New Market St., 4 Y. 133. Special limitations of time, therefore, having been abrogated, it is held that damage claims for the opening of streets are now by analogy assimilated to actions under the general limitation act of March 27, 1713, 1 Sm. L. 76. But no construction of the act of 1713 can operate upon a claim for damages until there has been an actual opening ; that is, some act done upon which the owner, in the absence of special statutory proceedings, can maintain either case or trespass : Landes v. Norristown, 21 W. N. 212; Pittsburgh District, 2 W. & S. 320 ; Funk v. School District, 18 W. N. 447; Sedgeley Avenue, 88 Pa. 512; Hannum v. West Chester, 63 Pa. 475;

Arguments.

Easton Bor. v. Walters, 18 W. N. 117; Easton Bor. v. Rinek, 116 Pa. 1.

3. This argument is addressed to this court to show that it is the actual taking of the land for public uses from which the statute of limitation commences to run; and while the appellant admits that the street is unopened and that his land has not been actually appropriated, what has been said may fall under the criticism that his petition is premature. He can submit with good grace to be turned out of court because he is too early in presenting his petition, but it is disastrous to him to be told that he is too late to seek for compensation for his land.

*Mr. Abraham M. Beitler* (with him *Mr. Charles F. Warwick, City Solicitor*), for the defendant in error:

1. The statutory procedure for the opening of streets in the Kensington district, provided by the act of March 6, 1820, is practically the same as is now in force in the city of Philadelphia. The board of surveys make the preliminary plot and locate the streets. Such plotting is not a taking of the land. It is notice to the owner and enables him to make improvements with reference thereto and prevents him from adding to the damages by constructing buildings on the line of such plotted streets: Farnam Street, 17 Wend. 649; Pittsburgh District, 2 W. & S. 325; Funk v. School District, 18 W. N. 447; Forbes Street, 70 Pa. 125; Sedgeley Avenue, 88 Pa. 514.

2. A street thus plotted on the confirmed plans may be opened in one of two ways: either by councils, proceeding under § 7, act of April 21, 1855, P. L. 266, or by the Court of Quarter Sessions. By the act of June 13, 1836, P. L. 555, §§ 76, 81, 82, all road damages in Philadelphia were to be thereafter ascertained under that act, and all special acts for that purpose, including that of April 3, 1804, were repealed. In 1836, the city was small in limits, had no board of surveys, and the system of plotting on plans was unknown. While it may be that the system of plotting streets, as provided for the districts of Spring Garden and Kensington and some others, by special acts, remained in force after the act of 1836, and may still remain in force, as decided in Parrish St., 6 W. N. 215, yet, after 1836, the proceedings to recover damages were under the provisions of that act.

3. The procedure under the act of 1836, has been modified considerably since that act, so far as Philadelphia is concerned. Under the older act of April 3, 1804, the assessment of damages by viewers was a mere preliminary appraisement, a fixing of a price at which the city could take or refuse to take, and no street could be opened till the city exercised her option. If the city did not take in one year, the proceedings became null and void. The act of April 21, 1855, gave power to councils to order the opening of any plotted street, and thereupon a jury proceeded, not to make an appraisement, but to assess damages. The act of April 1, 1864, P. L. 206, provides that when any street is ordered to be opened in accordance with law, a jury shall be appointed to assess damages, etc.; and that when the award is confirmed by the court, " the street shall forthwith be opened by the proper authorities." And see act of May 8, 1876, P. L. 138. So that now under the changed practice in road cases, the ordinance of councils or the decree of the Court of Quarter Sessions is an actual opening, and immediately the property owner is entitled to have his damages assessed and paid : Twenty-eighth Street, 102 Pa. 140.

4. The power of the court to direct an actual opening is beyond question. Thereupon the right of the property owner to an action for his damages is clear. This court held in Grape Street, 103 Pa. 121, the proceeding to have damages assessed is a suit within the meaning of that word as used in the constitution and in the act of 1713 ; and if the right to damages accrues upon the actual opening of the street by ordinance or by decree of the court, then it ends six years thereafter. The question raised has been decided several times as to a change of grade regulation : Fifth and Sixth Streets, 4 W. N. 443 ; Ridge Avenue, 99 Pa. 469 ; Philadelphia v. Wright, 100 Pa. 235 ; Campbell v. Philadelphia, 108 Pa. 300 ; Tenbrooke v. Jahke, 77 Pa. 395. And if the view of the learned counsel that the petition in this case may have been filed too soon be sustained by this court as law, it will overturn the practice which has been settled for years, and result in great absurdity and injustice. In this particular street, it will follow that the owner cannot claim his damages until the city actually opens the street, and the city cannot open the street till she pays the damages.

OPINION, MR. JUSTICE WILLIAMS:

There is but a single question raised by this record, but it is one of considerable practical importance. Volkmar street has existed for some years on the maps of Philadelphia as a projected or plotted street. It was never laid out by the Court of Quarter Sessions of Philadelphia county or by an ordinance of the city. As plotted it passed over lands belonging to John G. Maier, and in 1877 he applied for and obtained the appointment by the Court of Quarter Sessions of viewers to assess the damages to be sustained by him upon the opening of the street. The viewers made a report in his favor, which the court in 1878 set aside for reasons which do not appear in the record now before us. The street remained unopened, and in 1880 a petition was presented to the court under an act of assembly known as the Kensington act, passed in 1820, praying the court to order the opening of Volkmar street. This was so far proceeded in that in October, 1880, the court made the order prayed for and a copy thereof was issued, directed to the chief commissioner of highways of the city, requiring him to open said street. He neither opened it nor made any return to the order informing the court why he declined to do so. The street remains unopened down to the present time, and the land over which it is projected on the maps remains in the actual possession of John G. Maier, the owner, and is inclosed and cultivated with his adjoining lands.

In April, 1888, the present proceeding was begun by petition asking for the appointment of viewers to assess the damages to be sustained by Mr. Maier by the opening of the street; but in June, 1888, the court set aside the appointment and quashed the petition, holding that the petitioner's claim to compensation was barred by the statute of limitations, not having been presented within six years after the order of October, 1880, directing the chief commissioner of highways to open the street.

The question thus presented is, when does the right of action accrue to a land owner for the injury done him by the opening of a street upon his land? Is it when an order is made by the court directed to a city officer, which may slumber for many years without an effort at execution? Or

is it when some act is done in obedience to the order which disturbs the actual possession of the owner? If damages were being sought in a common-law form of action there would be no doubt about the answer to this question. The plaintiff could not sustain an action of trespass quare clausum while remaining in the undisturbed possession of his land. But it is said this proceeding is statutory, and a different rule must prevail because of the provisions of the statute.

The order of 1880 to open this street was made under the provisions of the Kensington act, which contains the following important provision : " Provided always, That no such street, road, lane, or alley so laid out shall be opened and appropriated to public use until the owner or owners of the ground through and over which the same may pass shall have been compensated for any damage he or they may sustain thereby." If, therefore, the city had been disposed to obey the order of the court and to open Volkmar street, its duty was made plain by the statute. It had first to take the steps necessary to have the damages ascertained. After this was done it had to pay or secure the payment of the amount of the ascertained damages to the owner of the land. Then, and not until then, could the city open the street and appropriate it to public use.

If no actual opening was desired or intended, no duty rested on the city to ascertain and pay the damages. By disregarding the order issued to the chief commissioner of highways she could leave, as she has done, the land in the uninterrupted possession of the owner, and her own funds to be appropriated to more pressing needs. Such being the position of the city, how is it possible that the land owner can suffer from this unexecuted order? It was not directed to him. He was charged with no duty in regard to its execution. It could affect him only when its execution was begun by the proper city officer. If he knew of its existence, he knew also that it was directed to an officer of the city, and that the first step in its execution must be to ascertain, and the next to pay, the damages sustained by him. He was not called upon by any provision of the Kensington act, nor by anything done to him or his lands by the city to institute proceedings against her. He had no cause of action against her.

If the rule laid down by the learned judge of the court below is correct, however, the city has acquired in spite of herself what she has steadily refused to appropriate, and the land owner has hopelessly lost what he has all the time had, and still has in his own possession. The proviso in the Kensington act which declares that "no such street, lane, or alley shall be opened and appropriated to public use until the owner of the ground over which the same may pass shall have been compensated," means nothing if this view of the case be sustained. The city has only to say, we will not obey the order of the court to open this street, because the street is not needed for the public accommodation, and then wait for the six years to roll around. When the time has passed the city can say, we have changed our mind; we will execute the order and open the street. If the land owner asks for the compensation which the statute secured to him as a condition precedent to the opening of the street, the city can reply the statute of limitations and tell him, that while she was refusing to appropriate his land and leaving him to continue its cultivation, she had paid him by the lapse of time. We cannot agree to this. The statute of limitations cannot begin to run upon a demand until it is ripe for collection. A right of action must exist before it can be barred. As between the city and the land owner no right of action exists under the Kensington act, or upon general principles, for the recovery of damages until some act done, or notice or demand made, affecting, or relating to, the possession or appropriation of the land.

We reach the affirmance of this judgment by holding a doctrine exactly opposite to that laid down in the court below. We say, not that the statute has already run upon the plaintiff's demand, but that it has not yet begun to run. The land owner is in the quiet and peaceable possession of his own, and unless the city officers change their minds about the desirability of opening Volkmar street he may so continue for years to come. When they do change their minds, the first step for them to take, towards the execution of the order, is to have the damages ascertained and paid. Whether the owner might give notice of his intention to abandon the land covered by the plotted street to the city, and proceed to have his damages

ascertained and paid, is not now before us, and we express no opinion about it.

> The order of the court below setting aside the appointment of viewers and quashing the petition is now affirmed.