# CHANGE OF GRADE IN PLAN 166.

## CHANGE OF GRADE IN ALLEN'S LANE.

### CHANGE OF GRADE IN K STREET.

### CHANGE OF GRADE IN L STREET.

APPEALS BY CITY OF PHILADELPHIA AND C. H. CLARK FROM THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued March 30, April 9, 1891—Decided October 5, 1891.

[To be reported.]

1. The proviso of § 27, act of February 2, 1854, P. L. 37, giving a right to damages for injuries to private property arising from any alteration of the grade regulations of any portion of the city of Philadelphia, to be assessed as in cases of damages for opening streets, applies only to changes of the grades, which were already legally established at the date of the act.

2. Wherefore, the Court of Quarter Sessions of Philadelphia county has no jurisdiction to assess damages for the change of a street grade established after February 2, 1854; as to such a grade, a mere "paper change" vests no right to damages; and the remedy, under § 8, article XVI. of the constitution, for an actual change upon the land, is by action on the case in the Common Pleas.*

3. If, however, a physical change of grade be made, in connection with the opening of a street, for which there is a statutory remedy in the Court of Quarter Sessions, and the jurisdiction of that court has once attached, it will determine the whole cause, including the assessment of the damages arising from such change of grade: Pusey v. Allegheny, 98 Pa. 522; Per Mr. Justice MITCHELL.

4. The legislation, and the decisions relating to damages arising from changes of street grades in Philadelphia, reviewed per Mr. Justice MITCHELL. Philadelphia v. Wright, 100 Pa. 235; Campbell v. Philadelphia, 108 Pa. 300; Grape St., 103 Pa. 121, and Schuler v. Philadelphia, 22 W. N. 161, considered, explained and distinguished; Ridge Ave., 99 Pa. 469, approved and followed.

---

* See foot-note on page 429, and Ogden v. Philadelphia, post. 430.

Statement of Facts.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.*

Nos. 318, 319, 304, 223, 224 January Term 1891, Sup. Ct.

## PLAN 166.

On June 10, 1886, C. H. Clark filed in the court below a petition averring that, on November 2, 1885, by virtue of an ordinance approved June 23, 1884, certain changes in grade on Plan 166 of the city of Philadelphia were confirmed by the board of surveys, and praying for the appointment of a jury to ascertain the damages resulting from such changes to certain real estate of the petitioner situated within the limits covered by said plan. Subsequently, Mr. E. Spencer Miller, assistant city solicitor, obtained a rule upon the petitioner to show cause why the petition should not be dismissed, the reason assigned for such dismissal being that § 27, act of February 2, 1854, P. L. 37, was replaced by § 1, article IV., act of June 1, 1885, P. L. 43. After hearing, the rule was discharged.[1]

A jury, appointed in pursuance of the prayer of the petition, reported on January 22, 1891, finding in substance that, prior to February 4, 1878, the survey plan, covering the locality in question, was one confirmed by the Court of Quarter Sessions on March 28, 1860; that the plaintiff purchased his property between the two dates mentioned; that on February 4, 1878, a revised plan was adopted, lowering the grade levels of a number of the streets bordering upon the petitioner's property; that no work was done upon the petitioner's property prior to November 2, 1885, toward making the same conform to the grades of 1878, except the partial grading of the sidewalks on Chester Avenue, a street opened by deed of dedication in 1883, and that no expenditure whatsoever was at any time incurred by the petitioner in reliance upon the grades of 1878, because of which he made claim, except that some thousands of cubic yards of dirt had been dumped into some of the holes; that none of the streets touching the petitioner's property had been graded to conform to the plan of 1878, except Chester Avenue, and upon that street no curbing or paving had been done at the time of

---

* Green and Clark, JJ., were absent when Nos. 318, 319 and 304 were argued, and Sterrett and Williams, JJ., were absent on the argument of Nos. 223 and 224.

Statement of Facts.

the revision of 1885; that the effect of the revision of 1885, upon which the petitioner's claim for damages was based, was to place the street levels approximately at the elevation of the plan of 1860, although somewhat lower; that the jury estimated the difference between the value of the petitioner's property according to the plan of 1878, and its value according to the grades established by the plan of 1885, at $12,000, which sum they awarded to him subject to the opinion of the court · upon the matters stated in the report, but that, comparing the value of the property according to the plan of 1860, with its value according to the plan of 1885, the latter plan was not less favorable to the property than was the former.

Exceptions to the report were filed by the city, inter alia, as follows:

1. The jury erred in awarding damages for the change of grades of merely plotted streets, not constructed or opened, to wit: Forty-fourth street, Forty-fifth street, and Kingsessing Avenue.[2]

4. The jury erred in awarding damages for the change of grades effected November 2, 1885, when it appeared that said change only restored the grade substantially equivalent to that prevailing when claimant purchased.

5. The jury erred in awarding damages for a change of grade to a property owner who had not thereby suffered depreciation of improvements erected in reliance upon the former grade.[3]

—At the argument upon the exceptions, on January 31, 1891, an agreement of counsel was filed, to wit:

"It is agreed for the purposes of all proceedings, based upon the report filed, that claimant has sustained no damage or injury by the confirmation of the grades of 1885, if the said grades be compared exclusively with those upon the plan of 1860, and the plan of 1878 be disregarded."

On the same day, the court, without opinion filed, entered the following decree: "Ordered that the fourth exception filed be sustained, the remaining exceptions be dismissed, and that the award of the jury be set aside; petition dismissed." Thereupon both the petitioner and the city took appeals to the Supreme Court. The assignments of error in the appeal of the petitioner were not printed in his paper-book. The city assigned for error:

1. The discharge of the rule to dismiss the petition.[1]

2. The dismissal of the city's first exception.[2]
3. The dismissal of the city's fifth exception.[3]

## ALLEN'S LANE.

On January 25, 1890, John Hamilton and others filed in the court below a petition for the assessment of damages for a change in the grade of Allen's Lane, by revision confirmed August 5, 1889. A jury, appointed in pursuance of the prayer of the petition, reported on September 27, 1890, finding that there had been two grades of Allen's Lane duly confirmed; that the first, following the natural surface of the land, was confirmed by the court on June 28, 1869, and that the second, confirmed by the board of surveyors on August 5, 1889, entirely altered the grade of 1869; and awarding damages to the petitioners, "caused by the change of grade from the natural surface of Allen's Lane to the confirmed grade of 1889."

To the report of the jury, the city of Philadelphia filed, inter alia, the following exception:

"4. The court is without jurisdiction, as the act of 1854, under which these proceedings were instituted, was repealed by the act of June 1, 1885, and the remedy of said claimants is by an action of trespass, and not by a petition for a road jury."

The court having entered a decree without opinion filed, dismissing the exceptions and confirming the report, the city appealed to the Supreme Court, assigning for error:

1. The dismissal of the appellant's exception.

*Mr. Joseph S. Clark* and *Mr. John G. Johnson* (with him *Mr. John G. Lamb*), for C. H. Clark, appellant in Plan 166, and for the appellees in Allen's Lane:

1. Except under some constitutional or statutory enactment, an owner can recover nothing for a change of grade, and his right to compensation depends solely upon the words of the law giving it: Green v. Reading Bor., 9 W. 382; Philadelphia v. Trenton, 6 Wh. 25; O'Connor v. Pittsburgh, 18 Pa. 187; Ridge St., 29 Pa. 391; Callender v. Marsh, 1 Pick. 431; Dillon on Mun. Corp., § 990. Such right, in this instance, is given by § 27, act of February 2, 1854, P. L. 37. The revision of 1885 being an alteration of the grade regulations of the city, we are directly within the terms of the section cited. The

provisions of § 8, article XVI., constitution of 1874, are not so definite as the act of 1854, in naming grade regulations, but they also are broad enough to cover the case. If they were not, the right we claim is clearly given by this statute.

2. Under the act of 1854, it is the mere change of grade regulations that entitles the owner to compensation : Fifth & Sixth Sts., 4 W. N. 443 ; French v. Milwaukee, 49 Wis. 584; Philadelphia v. Wright, 100 Pa. 235 ; Campbell v. Philadelphia, 108 Pa. 300 ; O'Brien v. Railroad Co., 119 Pa. 184. The claim of the city, in Plan 166, is really in the nature of an attempt to offset the supposed benefits of the grade of 1878 against our damage from the grade of 1885. There is no authority for such an offset. And there is no authority for the assessment of benefits resulting from a change of grade : Sixth St., 11 Phila. 414 ; and if there were, no such claim could be used as an offset to a claim arising out of an entirely different and distinct action of the city.

3. The city contends that § 27, act of February 2, 1854, P. L. 37, is repealed by § 1, article IV., act of June 1, 1885, P. L. 43, known as the Bullitt Bill, and therefore, that the Court of Quarter Sessions had no jurisdiction of these cases. A careful examination of the act of 1885 will show that its object was to make the surveyors of the city part of the department of public works, and that the repeal was confined to the " provisions " of § 27, act of 1854, which related to the subject about which the legislation in the act of 1885 was enacted. See Schuler v. Philadelphia, 22 W. N. 161. But even if the whole of § 27 were repealed, as there is no reference in the act of 1885 to the acts of May 23, 1874, P. L. 230, and June 8, 1881, P. L. 68, which distinctly re-conferred that jurisdiction, it remains unaffected.

*Mr. E. Spencer Miller*, Assistant City Solicitor (with him *Mr. Charles F. Warwick*, City Solicitor), for the city of Philadelphia, appellant in Allen's Lane, and both appellant and appellee in Plan 166 :

1. The jurisdiction claimed for the Court of Quarter Sessions in this case, is under § 27, act of February 2, 1854, P. L. 37. That section, which perhaps was not intended to be applied to other cases than changes of grade occasioned in the adjust-

ment of conflicting grades at the borders of the various munici-
palities consolidated by the act: Ridge Ave., 99 Pa. 469, has
been repealed in careful terms : Act of June 1, 1885, P. L. 43.
The decision in Schuler v. Philadelphia, 22 W. N. 163, is not
against this position.

2. Were that provision of the act of 1854 in force, it would
not give damages for a paper change of grade upon an un
opened street, merely plotted upon an official plan as traversing
acres of corn land and sequestered cattle pastures : Pusey v.
Allegheny, 98 Pa. 522 ; Rigney v. Chicago, 102 Ill. 80 ; Cham-
berland v. Railway Co., 2 B. & S. 605 (110 E. C. L. 604) ;
Beckitt v. Railway Co., L. R. 1 C. P. 241 ; 3 C. P. 82 ; Chi-
cago v. Taylor, 125 U. S. 165 ; Penna. R. Co. v. Lippincott,
116 Pa. 472 ; Penna. R. Co. v. Marchant, 119 Pa. 541 ; Mont-
gomery v. Townsend, 84 Ala. 478.

## K AND L STREETS.

On July 22, 1889, certain owners of property on K street,
Philadelphia, filed a petition for the assessment of damages for
a change of grade in said street, and on August 17, 1889, a
similar petition was filed by owners of property on L street.
Both petitions were referred to the same jury of view, who, on
August 15, 1890, reported, finding in substance that the first
grade of the streets in question was confirmed by the court on
June 11, 1860; that as to K street, that grade was below the
natural surface, while as to L street, it was at about the natural
surface ; that on March 15, 1871, another grade was confirmed
by act of assembly, which would have elevated the streets a
considerable number of feet above the natural surface; that on
August 6, 1888, the board of surveyors confirmed another
grade, putting both streets below the natural surface; that as
to L street, none of the grades had been physically established,
but as to K street, the last confirmed grade, that of 1888, had
recently been physically established; that K street had been
paved at the natural surface, by ordinance approved June 28,
1876, but L street was unpaved ; that, except as to two proper-
ties named, the grade of 1888 was less injurious to the land-
owners than that of 1871, but the jury awarded to all the
claimants damages based upon the change from the natural
surface of the streets to the confirmed grade of 1888, leaving
to the court the question of law involved.

Exceptions to the award of any damages, to the amounts of damages awarded, and to the manner of assessing damages, filed by the city, having been dismissed by the court, without opinion filed, the city took the appeals at Nos. 223 and 224, assigning the dismissal of the exceptions for error.

*Mr. James Alcorn* (with him *Mr. Charles F. Warwick*), for the appellant.

*Mr. Edwin O. Michener* (with him *Mr. Thomas R. Elcock*), for the appellees.

## PLAN 166.

OPINION, MR. JUSTICE MITCHELL:

The ruling question in these appeals is the applicability of the proviso of § 27 of the consolidation act of February 2, 1854, P. L. 37, which gives a right to damages for change of grade regulations. To determine this question properly we must consider the condition of circumstances and the law existing at the passage of the act.

The city of Philadelphia, as laid out and chartered by Penn, had undergone no change of corporate boundaries for more than a century and a half. As population had grown, adjoining districts and boroughs had been incorporated from time to time, with separate municipal and quasi-municipal governments, until in 1854 the county included the city proper, ten incorporated districts, six boroughs, and thirteen townships: See Address on the Road Laws of Pennsylvania, read before the Law Association of Philadelphia by Abraham M. Beitler, Esq., 1891. The northern and southern boundaries of the city, Vine and Cedar streets, so far as continuity of building, density of population, and community of interests were concerned, had become not only arbitrary, but imaginary lines of distinction. The evils and inconveniences of this state of things, in the conflicts of authority, the impeding of police action, the variation of taxes and multiplication of tax officers, etc., are pictured by Eli K. Price in his History of the City's Consolidation, Ch. 4. Among these evils, not the least was the necessity for a uniform system of streets, street grades, sewers, etc., for a population already approximating half a million, located on a site whose general level was so little above tide-water as to

make the problem of drainage one of difficulty as well as importance. The population had not only expanded from the old city into the adjoining districts of Southwark, Moyamensing, the Northern Liberties, and Spring Garden, but had also grown from detached centres, such as Germantown, Roxborough, Frankford, and Hestonville. Each of these had its own system of roads and drainage, developed on its own peculiar requirements without reference to the others. The central city and the outlying villages were approaching each other, and it was apparent that provision must be made for the day when they should come into continuous and actual contact. With this necessity in view, § 27 of the consolidation act, provided for the appointment by councils of a competent number of skilful surveyors and regulators, who should constitute a board of surveyors, for such purposes relating to surveys, the planning of the city, the construction of sewers and grading of highways, as councils should declare by ordinance; provided that surveys and regulations, already made or directed by law to be made, of any portion of the county of Philadelphia, should not be affected by this section, but should remain unaltered, "unless said alterations shall be ordered by a resolution of councils and approved by the Court of Quarter Sessions, upon public notice. . . . . And provided further, that in any alteration that may be made of the regulations of any portion of the city, in conformity with the provisions of this section, whereby damage may ensue to private property, compensation shall be made for such damage, to be ascertained and paid by law as in case of damage for opening streets." The precise question now before us is whether this last proviso for damages applies only to changes of grades which were then already legally established, or was a general and continuing provision for all future changes, even in grades established thereafter.

We are of opinion that the former was the true intent and scope of the act. Such, in the first place, is the natural and obvious meaning of the words used, " Any alteration that may be made of the regulations of any portion of the city ; " that is, of the *existing regulations*, previously established by law, and specifically preserved and made unalterable, except in the mode expressly provided in the section itself. There are no words to indicate a reference to possible changes of grades

which were themselves to be established in the future upon
what was intended to be a uniform and permanent system.

Again, the actual condition of things in the various localities,
favors this view. As already noted, the outlying sections had
developed from different starting points, and their systems
were in some cases widely divergent. Frankford was flat, and
its system, both of street lines and grades, was largely governed
by the Delaware river. Germantown grew along the line of a
main street much higher, and capable of draining from the
ridge on one side or the other either into the Delaware or the
Schuylkill. Roxborough was higher still, and necessarily got
its outlet in the Schuylkill. The lines of property had been
adjusted and built upon, in each locality, in reliance upon its
own roads and grades, and these were to be preserved as far as
consistent with a uniform general plan, contemplated and
authorized by the act. For such changes as the general plan
for the general good made necessary, compensation was to be
made, but such changes were manifestly considered to be ex-
ceptional. The rule was to preserve the local plans and grades
already established. In regard to future establishment of
grades, however, the case was different. That was to be under
the direction and control of the central body, the board of sur-
veyors which the act created. No present injury would ensue
to any one from such grades; no owner of property had been
misled by them, or made improvements in reliance on them.
They did not come within the reasons for present compensation,
and it is not natural to presume that they were intended to be
included in the provision for it.

If now we turn from the actual circumstances of the differ-
ent localities to the condition of the law at that date, we are
led to the same conclusion as to the intent of the statute.
Compensation is to be made for damage to private property
by any alteration of the *regulations*, and such compensation is
" to be ascertained and paid by law, as in case of damage for
opening streets." Primarily and principally, of course, this
latter provision refers to the mode of ascertaining and paying
the damages, but it is also important as showing the legislative
intent to assimilate the case of damage by a change of grade
to damage by opening a street. In doing so, however, the act
makes one very striking variance of rule in the two cases.

Damages for opening are not given till the actual operation on the ground. This is the general rule of law; that the cause of action arises only when the injury is complete. Such is the general rule when property is taken for streets: Whitaker v. Phœnixville Bor., 141 Pa. 327; Volkmar St., 124 Pa. 320; Brower v. Philadelphia, 142 Pa. 350; though, under the language of the constitution the cause of action for some purposes, as, e. g., for consequential damages from the exercise of eminent domain, is complete as soon as the part of the work which will do the injury is begun: O'Brien v. Railroad Co., 119 Pa. 184. The placing of a street upon the public plan is so far an interference with the rights of property that no building may thereafter be erected within the lines, and those so erected must be removed at the expense of the owner, and without damages being paid therefor when the street is opened: Act of December 27, 1871, § 3, P. L. (1872) 1390; Volkmar St., 124 Pa. 320. Yet no right of action accrues until the actual opening. But the twenty-seventh section we are considering gives the action in express terms for change of regulation, or, as it is commonly called, the paper change, without reference to the actual change on the ground. The reason for such an anomaly, if applied to future grades, would be difficult to comprehend. An owner, having a mere plotted or paper street, laid out at a certain grade through his land, would have an immediate action for a change in the grade regulation which appeared to be to his disadvantage, though nothing should be done on the land, and the grade might immediately be restored to its former regulation and the change never be carried out on the land at all; while he would have no action for the restriction on his right to use his land for building, until the actual opening of the street, and if it was never opened, but vacated on the plan, his right of action (at least, as the law then stood) would never arise at all. This is not a fanciful or improbable illustration, for in 1854 considerable tracts of open country, in corn fields and truck farms, lay between the built-up centre and some of the outlying towns, but both the latter were growing towards each other, and the period was approaching when grade regulations would become necessary over all the intervening territory. As to all such regulations, the case put for illustration was likely to arise constantly and in the

near future. But if we confine the operation of the section to changes of plans already established, then the intent becomes clear and the principal difficulties disappear at once. The detached centres of population and improvement had, as already noted, developed on their own systems, which had not extended beyond their own immediate localities, but, within their limits, had been conformed to, and private rights had been fixed, and public expenditures made in reliance upon them for a long course of years. Germantown, for example, was nearly as old as the city of Philadelphia itself. As to such localities, a change of grade regulation might well be considered as such an unsettling of the existing order of things, as to be equivalent to the actual change on the ground which was presumably to follow in the immediate future, and therefore, for such change, compensation was provided as if for an actual change, upon the principles and in the mode of compensation for the opening of a street. Such a view is one that would readily present itself to a law maker familiar with the circumstances and the law of that day, and there is nothing in the language of the act to show that it was intended to have any wider scope.

But, further, there is another view of the state of the law at the date of the statute, which leads to the same result. The idea of compensation for consequential damage, resulting from change of grade was a novelty. There was no general provision, constitutional or statutory, for such compensation, and elsewhere it did not exist. Even in so hard a case as O'Connor v. Pittsburgh, 18 Pa. 187, Chief Justice GIBSON said the court had had the cause re-argued in order to discover, if possible, some way to relieve the plaintiff, but had discovered none. It is said by the present Chief Justice, in Ridge Ave., 99 Pa. 469, 478, that it is at least probable that the twenty-seventh section was introduced into the consolidation act in view of the decision in O'Connor v. Pittsburgh, as it was considered " a great hardship that when an owner had improved his property in accordance with a grade fixed by the city, to have it injured by a subsequent change of grade, and no remedy for such injury. The twenty-seventh section of the act of 1854 was intended to give such remedy. But as none existed before the passage of the act, we must limit it to such cases as come within its

terms." It will be observed that O'Connor v. Pittsburgh was a case of property improved upon the faith of an established grade, and a subsequent change actually made on the land. As already suggested in a preceding paragraph, the local centres whose lines and grades were liable to be changed under § 27 had been developed in reliance upon their own long-established systems, and the change which was imminent, even though it might be only of the grade regulations, might well be considered as such an unsettling of vested conditions as to be morally equivalent to an actual change on the ground, and to be entitled to compensation as such. The circumstances were exceptional, and they were given an exceptional remedy. It is more natural to suppose that such remedy was to be confined to the existing exceptional conditions, than that it should suddenly be interjected as a permanent anomaly in the system of road damages, of which the new remedy for change of grade was made a part. New rules and changes of law in respect to that-system have never sprung full fledged into existence, but have been developed gradually, step by step, as experience suggested. The course of local taxation for local benefits was recently reviewed briefly in In re Howard St., 142 Pa. 601, and a like review of the course of subsequent legislation upon the present subject tends to confirm the construction contended for in regard to the twenty-seventh section. In the very next year, a supplement to the act of 1854 was passed, reorganizing the board of surveyors, changing their mode of election and tenure of office, and modifying their powers. The act of April 21, 1855, § 4, P. L. 264, directed councils to cause to be completed a survey and plans of the city plot not already surveyed, and gave the board of surveyors, under direction of councils, authority to alter the lines and regulate the grades of any street laid out upon the public plan but not opened. It was held that this was pro tanto a repeal of the power over grades given by § 27 of the act of 1854, and restricted such power to unopened streets: Paynter v. Young, 4 Phila. 153. This act specifically provided that no ground should be taken for public use without compensation, but made no provision for compensation for changes of grade, and the reason seems clear. Changes of grade of unopened streets were mere paper changes for the future, and were not in any way equivalent to

actual changes on the ground of previously established grades, for which alone the act of 1854 had intended to provide compensation. And in 1871, act of June 6, 1871, P. L. 1353, the power of the board over the plans and regulations of all streets, opened as well as unopened, was restored, but no provision was made for compensation for damage by change of grade. The exceptional circumstances which required the exceptional remedy of 1854 were no longer thought to exist, and this although the subject of consequential damages from public works was in the public mind, and the right was secured by a constitutional mandate only two years later.

Again, by the act of April 21, 1855, § 7, P. L. 266, councils were authorized to order any street on the public plan to be opened, and " to institute an inquiry as to persons benefited, . . . and to withhold appropriation for the opening of the same, until the persons found to be benefited shall have contributed. . . . . towards the damages." By the further supplement to the consolidation act passed May 13, 1856, § 17, P. L. 571, this power of councils to refuse to appropriate for the opening of a street until the owners benefited should contribute " the whole or any part thereof, as councils may have determined to be just," was enlarged to cover all cases whether " commenced in councils or in the ordinary course before the court." By the further supplement of April 21, 1858, § 6, P. L. 386, the juries " to assess damages for opening, widening, or vacating roads or streets in said city," were directed to assess and apportion the same among and against owners benefited, and the chief commissioner of highways was not to carry out the opening, etc., until such parties paid or secured the damages. Finally, by the act of April 1, 1864, P. L. 206, the juries were directed to assess the properties benefited, and the city was authorized to file and collect claims as in other cases of municipal assessments. In this progressive development of the theory of " benefits," from the germ of withholding appropriations in the act of 1855, to the full fledged compulsory assessment under the act of 1864, the subject of benefits from change of grade does not once appear. It was in pari materia with the opening, widening and vacation of streets; injury or benefit could result as well from one cause as the others, and it is difficult to suppose that, if damages for injury were intended

or supposed to be recoverable, the legislative doctrine of benefits should not also have been applied.

Whether, therefore, we regard the language of the section itself, the actual condition of the localities expected to be affected, the state of the law at the time, or the course of legislation since, we are led equally to the view that the section was intended for the special and immediate changes of then existing grades, resulting from the act, and not as a continuing part of the system of road damages.

It remains to examine the decisions. It is somewhat singular that the precise point does not appear to have been authoritatively settled either in this or the other courts. It was, however, distinctly passed upon in Ridge Ave., 99 Pa. 469.

The surface of the Ridge Turnpike had been fixed by the turnpike company, under its charter prior to 1854. After the turnpike had become a city street, the grade was revised under an ordinance of 1871, and the change was actually made on the ground in 1873. In 1878, property owners commenced proceedings in the Quarter Sessions for damages for the change of grade. The case was argued and decided chiefly on the statute of limitations, but the present Chief Justice, in delivering the opinion, also rested the judgment on the ground that the case was not within the twenty-seventh section of the act of 1854, saying: " It is too plain for argument that this section refers only to a change of a grade previously established by the city of Philadelphia, or by one of the municipalities referred to prior to consolidation. It speaks of nothing else, and gives a remedy for nothing else." The precise point has not since been considered. In Philadelphia v. Wright, 100 Pa. 235, the facts were such that it might have been raised, and to that extent the case appears to sanction the view that the section applies to changes of grade established after 1854. But the question was not raised; the case was argued and decided on the statute of limitations, and it is clear that it was not intended to run counter in any way to the decision in Ridge Avenue, as the opinion is by the same judge, and is distinctly rested on that case. The same thing may be said of Campbell v. Philadelphia, 108 Pa. 300. There was a change of plan in April, 1875; an action on the case under the constitution, in December, 1881; a plea to the jurisdiction, and a

·plea of the statute of limitations, and a demurrer to the latter, on which the court below entered judgment for defendant, which this court affirmed. The question of the continuing force of the act of 1854 was not raised or discussed. It appears in the case that if the cause of action be regarded as arising from the change of regulation, the action was too late, and if, on the other hand, from the actual change, the plaintiff was ·not then the owner of the land. In either view, therefore, the judgment for defendant was right, and this is probably all that was intended by the brief per Curiam opinion, though it does contain the expression that the " Quarter Sessions has exclusive jurisdiction in the assessment of damages for the establishment of a grade of streets on a confirmed plan, and for a change of regulation thereof." But, for damages by the establishment of a grade in the first instance, there was no remedy in any court: Green v. Reading Bor., 9 W. 382 ; and if a remedy now exists by virtue of the constitution, it is now settled that it must be asserted by an action in the Common Pleas : Chester Co. v. Brower, 117 Pa. 654. The language of the opinion in Campbell v. Philadelphia must therefore be confined to the point actually under consideration, and that was a demurrer to a plea of the statute of limitations. Grape St., 103 Pa. 121, is also cited in favor of the continuing effect of the section under consideration. The change of grade was made in 1875, and the real question in the case was, whether the special limitation of one year for proceedings under the road law of 1836 had been abrogated by § 21 of article III. of the constitution. It does not appear in the report when the first grade was established, but the record, which I have examined, shows that Grape street was opened as a public road in Manayunk in 1836, and that several revisions of the plan were made by the borough prior to 1854. Whether these involved the establishment of a grade for Grape street was disputed, and the jury presented majority and minority reports on it; but, as the court below, after considering both reports, referred them back to the jury to find the damages, it is clear that the case was regarded as a change of a borough grade established before 1854, and therefore within the express provisions of the twenty-seventh section, no matter which construction of that section we adopt. The case, therefore, throws no light on the present

Opinions of the Court.

question.  The latest case on the subject, Schuler v. Philadelphia, 22 W. N. 161, was an action on the case in the Common Pleas, having a count for damages by change of grade regulation, and also a count directly under the constitution for damages by the actual change on the ground.  The referee, a learned lawyer exceptionally well versed in the intricacies of legislation relating to Philadelphia, held that the cause of action was complete under § 27, on the change of regulation, and that the constitution had not created any new or additional right, but had merely given the previously existing right a constitutional sanction, and therefore that the jurisdiction was still in the Quarter Sessions.  The judgment was affirmed on the referee's opinion; but, as it appears that the grade which was changed had been established by the borough of Germantown in 1850, before consolidation, the case, like Grape street, was within the express terms of § 27 under either construction, and gives us no assistance in the present inquiry.

These are all the cases that bear even collaterally on the precise question before us; and, though there is some uncertainty in the language employed from time to time, yet there is nothing to overcome the view expressed in Ridge Avenue, the only case in which the question has been directly discussed; and as that view is in entire accord with the construction of the section to which the detailed examination above given, leads us, we have no hesitation in adopting it, even at this late day, as the true construction of the intent and scope of the act.  We do this with the more satisfaction as we thereby avoid an anomalous exception in the system of road damages, and preserve the uniformity of the general rule, without injustice to any one.  The city is not exposed to the danger of speculative damages for a change that may never be made in fact, while the property owner will still be compensated, but for an actual change when it is made on the land.  Until the legislature shall provide another remedy, the constitutional protection will have to be invoked by an action on the case,* except that, where there is a statutory remedy in the Quarter Sessions, as in the case of opening a street, the jurisdiction of the court

* This case was argued and decided before the passage of the act of May 16, 1891, P. L. 75, and the opinion, though filed subsequently, does not intend to refer to the effect of that act.—J. T. M.

having once attached, it will determine the whole cause, including the damages from change of grade : Pusey v. Allegheny, 98 Pa. 523.

The grade of the streets involved in these cases was established in 1878, and the change upon the plan which is the foundation of the proceedings, was made in 1885. The cases were, therefore, not within the act of 1854.

Judgment affirmed.

ALLEN'S LANE, K AND L STREETS.

OPINION, MR. JUSTICE MITCHELL :

In these cases, the grades for the change of which damages were recovered were established after 1854. The cases, therefore, as held in re Plan 166, opinion filed herewith, are not within the consolidation act, and the remedy for damages by the actual change on the land is in another court.

Judgments reversed, and petitions dismissed for want of jurisdiction.