# Hermann v. North Pennsylvania Railroad Co., Appellant.

*Railroads—Eminent domain—Damages—Land impaired in value by plotted street—Merger—Streets—Road law.*

1. Where a municipality plots a street in anticipation of its opening, no damages can be collected for the impairment in value until the street is actually opened; but the owner has an inchoate right to such damages, which will be treated as though merged in the real estate if, after such plotting, a corporation with the right of eminent domain condemns the property; and the company must pay the market value without regard to the detrimental effect of such plotting.

2. Where a railroad company condemns part of a property, it is not error to exclude proof that a portion of the premises is in the bed of a street plotted on the city plan, but not opened; and to instruct the jury, in determining the value before and after, to consider the property for the best use to which it can be put, unaffected by the plotting through it of the unopened street.

Argued March 23, 1921. Appeal, No. 308, Jan. T., 1921, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1918, No. 1942, on verdict for plaintiff, in case of John C. Hermann v. North Pennsylvania Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal by plaintiff from award of jury of view. Before BALDRIGE, P. J., specially presiding.

From the record it appears the jury of view awarded plaintiff $2,300.

At the trial defendant made the following offer: Mr. Hopkinson: I offer in evidence the city plan showing the plotting of Hunting Park Avenue, in the vicinity of Fifth and Hunting Park, and showing the property of John C. Hermann, the plaintiff. I also offer to show at the time of the taking, Hunting Park Avenue was plotted across the property.

Mr. Frazier: I object to the offer because it is irrelevant and has no effect upon the market value of our property in this proceeding.

Objection sustained. Exception (2).

Plaintiff presented this point:

5. In determining the value before and after, you are to consider the property for the best use to which it could be put unaffected by the plotting through it of any unopened street: South Twelfth Street, 217 Pa. 362.

The Court: That point we affirm. The question is as I have said, what was the fair market value of the property before the appropriation and what was the fair market value of the property after the appropriation as affected by the taking? (3)

Verdict and judgment for plaintiff for $3,500. Defendant appealed.

*Errors assigned,* among others, were (2) ruling on evidence as above, quoting bill of exception, and (3) above instruction, quoting it.

*Edward Hopkinson, Jr.,* with him *Abraham M. Beitler* and *Charles Heebner,* for appellant.—Market value of property taken or injured for public use means the fair value of the property as between one who wants to purchase and one who wants to sell: Schuylkill River, etc., R. R. v. Stocker, 128 Pa. 233; Marine Coal Co. v. Pittsburgh, etc., R. R., 246 Pa. 478.

*Bertram G. Frazier,* with him *Louis Strousse* and *John W. Frazier, Jr.,* for appellee, cited: Marine Coal Co. v. Pittsburgh, etc., Ry., 246 Pa. 478.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 26, 1921:

Appellant states the following questions involved: "Where a railroad company condemns part of a property in Philadelphia, is it not error (1) to exclude proof that

a portion of the premises is in the bed of a street plotted on the city plan, but not opened, and (2) to instruct the jury, in determining the value before and after, to consider the property for the best use to which it could be put unaffected by the plotting through it of the unopened street?"

The Act of December 27, 1871, P. L. (1872) 1390, section 3, provides that it shall not be lawful to erect any building within the lines of a plotted street, and, when the street is opened, such buildings shall be removed at the expense of the owner, "without any damages being paid therefor."

In Penna. Hospital v. Phila., 254 Pa. 392, 395-6, we said that "every species of property" was held "subject to requisition for public service,"—in other words, subject to condemnation under the right of eminent domain; and we there in effect ruled that subordinate property rights, directly connected with real estate thus taken, were appropriated in the condemnation. This case was affirmed on appeal in Penna. Hospital v. Phila., 245 U. S. 20, 23.

We have repeatedly decided that no damages are collectable until a legal opening occurs, by the actual taking of land (Plan 166, 143 Pa. 414, 423, and cases cited) ; but, in South Twelfth Street, 217 Pa. 362, 366, while acknowledging this rule, we recognize also that any "impairment of value," resulting from the plotting of a street in anticipation of its opening, must be viewed "as the immediate consequence of steps......toward the [eventual] appropriation......of the owner's land." When the appropriation takes place, this "impairment of value" from these preliminary steps, becomes merged, as it were, in the damages then payable, the matter being worked out practically, in assessing the damages, by simply ignoring the detrimental effect of the plotting, and treating the value of the property as though there had been no such harmful results.

If the course just outlined were not followed at the time of the appropriation, the law, in justice to the owner, would have to pursue the somewhat impractical method of considering two separate items: (1) the early impairment of value, suffered by the owner from the plotting, and (2) the damages to the real estate, as thus impaired, caused by the subsequent taking of the land; otherwise, as said in South Twelfth Street, supra, we would have illegal "confiscation......feebly disguised." This complication is avoided, however, in the practical manner indicated.

While the Twelfth Street case was an instance of appropriation of land by a municipality, the early plotting and subsequent taking being by the same corporation, yet wherever real estate, containing a previously plotted but unopened street, is taken by the right of eminent domain, the principles announced in that authority must apply, or we would have the feebly disguised confiscation there referred to, and that to the benefit of the condemning corporation, which would pay for the land appropriated at its impaired value, and then, when the actual opening occurred, collect damages for such impairment; but, as previously noted, such an injustice is avoided by recognizing the fact that, although the impairment of value from the plotting is noncollectable, and no damages can be had by any one till the appropriation takes place, nevertheless, all the while, an inchoate right exists in the persons who own the land, so far as such impairment of value is concerned, the latter, as before said, being the "consequence" of "steps taken toward the appropriation." Therefore, where the property is condemned for public use, prior to the opening of the proposed street, by a corporation other than the one which did the plotting, this inchoate right is tacitly recognized and, in a manner, set off against any actual impairment of value caused by the plotting; but the desired result is accomplished in a practical way by treating the right as though merged in the real estate con-

demned, and appraising the latter as if it had suffered no depreciation,—in other words, by ignoring the detrimental effect of the plotting.

All of which means simply that, conceding impairment of value, since he who owned the land at the time of the plotting could hold his property till the street was actually cut through, or, if he voluntarily sold, could make the purchaser equitably discount to him the future damages which the latter would presumably collect from the municipality, therefore, when another corporation, possessing the right of eminent domain, forcibly takes the real estate in question, before the proposed street is opened, and thus, without the owner's consent, deprives him of every opportunity to protect himself from the harmful results of the plotting, it must be recognized that such corporation also takes the owner's inchoate right in what the city eventually will pay to it for the damage done the property, and this it should settle for; but, as already stated, the practical method of working out the payment is the course followed by the court below.

When the facts at bar are treated along the lines suggested, there is no more difficulty about reaching the market value in this case than in South Twelfth Street. As to the rights of the respective owners, in both instances the real estate in controversy was taken, in invitum, for public use; hence, albeit the facts are somewhat different, all that is said with respect to confiscation in South Twelfth Street well applies here, on the theory already indicated.

It is, perhaps, unnecessary to state that nothing in the present opinion, be it discussion of theories or other matter, is intended to disturb in any sense the prior rulings of this court on the effect of the plotting of streets, so far as legal liability for ensuing damages is concerned, or those which relate to assessing the market value of real estate appropriated under the right of eminent domain; but, to avoid possible future misunderstanding, we now say that it is not our purpose to

depart in any degree from the established lines of decision governing these points.

The assignments of error are overruled and the judgment is affirmed.