**DADE COUNTY v. CARR-WELL ESTATES, Inc. et al.**
No. 68-15059.

Circuit Court, Dade County.

June 16, 1969.

Thomas C. Britton, County Attorney, for the petitioner.

Toby Prince Brigham of Brigham & Brigham, Worley, Gautier & Patterson and Sinclair, Louis & Huttoe, all of Miami, for certain of the defendants.

DAVID POPPER, Circuit Judge.

*Pre-trial ruling as to effect of Dade County's zoned right-of-way provisions on valuation of full compensation in eminent domain proceedings:* This cause came on to be heard upon the joint motion made at the pre-trial conference by all of the defendants as to parcels scheduled for trial in the above-styled cause. The defendants' motion sought a ruling in advance of trial that Dade County's "zoned right-of-way" provisions and any limitations imposed thereby, or resulting therefrom, upon the use and/or actual market value of the properties involved in this eminent domain proceeding must, as a matter of law, be disregarded in ascertaining the full compensation guaranteed to be paid the respective defendants for the taking of the parcels sought to be acquired in the above-styled cause.

Having heard and considered the argument of counsel, having considered the extensive briefs submitted by counsel, and being fully advised in the premises, the court finds and holds as follows —

The "zoned right-of-way" provisions of the Dade County Code were first enacted by resolution in 1938 and carried forward by a series of enactments until the last County Ordinance §57-19 was enacted on October 22, 1957, which has since been codified in the present Dade County Code. The "zoned right-of-way" provisions of Dade County are a body of regulations by which the county has established a "right-of-way plan" and designated the future minimum widths of streets and ways in the unincorporated areas of Dade County and by it the owners of abutting properties are required to develop their properties to conform to the said zoned future street width rather than in conformity with their property line at the existing street right-of-way line. Thus, in platting, in obtaining approval of building, offstreet parking and driveway layout or plot plans, in obtaining building permits, in measuring

building set-backs, and the like, the area of private property lying between the official right-of-way line so zoned and the property line at the existing street right-of-way, must be excluded and not considered. (See, for example, Dade County Code sections 33-133 through 33-137, 33-41, 33-44, 33-123, 33-127, 33-147, 33-1, items (9), (77) and (90).)

Dade County in this cause seeks to acquire the necessary right-of-way to widen a portion of Bird Drive and its intersections to the width previously planned and zoned for future right-of-way as aforesaid. As of the date of taking, most of the properties from which the parcels are taken had been developed in conformity to the requirements of the "zoned right-of-way" provisions; some had not; and one or more are still vacant and unimproved. The properties of the defendants all have a "BU" or business zoning classification. The date of taking upon which full compensation is to be valued is December 1, 1968.

The petitioner contends that its "zoned right-of-way" provisions are valid zoning regulations and that market value based on the factors which the market considers is the measure of compensation. Thus, the petitioner argues, if its appraisers find that the market recognizes the existence of the Dade County "zoned right-of-way provisions" and reflects a diminished value due to the effect of said zoning restrictions, then its appraisers may so testify and the jury may consider such testimony as an issue of fact in ascertaining full compensation.

The defendants, on the other hand, assert that Dade County's "zoned right-of-way" provisions and any effect they may have in diminishing actual market value on or prior to the date of taking must be disregarded in ascertaining the full compensation to be paid as a result of the taking of the parcels in this cause. Otherwise, the defendants contend, the "zoned right-of-way" provisions would be invalid and unconstitutional in their enactment or in their application in that said provisions bear no reasonable relationship to the proper objectives of the police power but are simply an aid to the exercise of the power of eminent domain in making it possible to acquire road right-of-way more cheaply; and/or in that said provisions would amount to a taking of private property without full compensation being first made or secured to the owners. The defendants also contend that the provisions do not have the legal effect which the petitioner claims for them in limiting the use to which the owners may put the property affected by said provisions.

The usual zoning ordinance which regulates the front, side, and rear yard spacing of buildings and structures has been held valid against attack as being a taking without compensation and has

been held a reasonable exercise of the police power. Gorieb v. Fox, 274 U.S. 603, 47 So. 675, 71 L.Ed. 1228, 53 AUR 1210, and City of Miami v. Romer, 58 So.2d 849, and numerous other cases cited by petitioner in its brief.

But the Dade County "zoned right-of-way" provisions are distinctly different from the building setback and spacing regulations mentioned above. They are actually the first step in the county's program to establish its future system of streets and ways which culminates in acquisition and construction of the planned streets. §33-133 of the Dade County Code sets forth its purpose as "Right-of-Way plan and Minimum widths of Streets and Ways." §33-134 of the Dade County Code makes provision for buildings and structures to be placed in the area zoned for future street right-of-way if the owner will move such building or structure at his own expense and will waive any damages in so far as such building or structure within the zoned right-of-way may be taken for widening the street. In addition, the usual front, rear, and side spacing regulations for buildings and structures are provided by other provisions of the Dade County Code besides the "zoned right-of-way" provisions such as §33-51 and §33-1, item (96) which pertain in this case. After the street is widened to its zoned width, the only building and structure setback will be that required by these usual setback regulations and not that which results from the "zoned right-of-way" provisions. This distinction between the "zoned right-of-way" provisions and the regular building setback zoning regulation of Dade County's Code has been recognized in the decisions of the Florida courts in Cook v. Di Domenico, 135 So.2d 245, Mayer v. Dade County, 82 So.2d 513, and City of Miami v. Romer, 73 So.2d 285.

In ruling on the defendants' motion it is not necessary to reach the questions concerning the validity or constitutionality of the Dade County "zoned-right-of-way" provisions in their enactment or application, and this court specifically makes no ruling with respect thereto.

The Supreme Court of Florida said in City of Miami v. Romer, 73 So.2d 285, 286-287 —

". . . it should be noted that 'the mere plotting of a street upon a city plan without anything more does not constitute a taking of land in a constitutional sense so as to give an abutting owner the right to have damages assessed.' Miller v. City of Beaver Falls, 368 Pa. 189, 82 A.2d 34, 36; and cases collected in the annotation in 64 A.L.R., beginning at page 546. And this is so, even though the ordinance prevents the development of the property in a manner not

conforming to the plan. In such case, payment of compensation must await the actual 'taking' of the property by the city, or such actual deprivation of a beneficial use as to amount to a compensable 'taking'."

The line of authority noted by the Florida Supreme Court from Pennsylvania is in point assuming the validity of Dade County's "zoned right-of-way" provisions. Early in the jurisprudence of Pennsylvania municipalities were given authority to plan and map future right-of-way for streets and by ordinance require the owners to develop their properties only in conformity with the official right-of-ways established. In condemnation proceedings the question arose as it has in this case as to how such restrictions on property development and use should be regarded in ascertaining the compensation to be paid upon the actual taking for the planned street improvement.

It was held in the case of In re South Twelfth Street in City of Allentown (Sup. Ct. Pa. 1907) 66 A. 568, 569, as follows —

> The right of the individual to compensation for land subjected by municipal authority to public use can only arise when the land has been taken. Until this occurs, the owner has not been disturbed in his possession, and is consequently without injury. The plotting of a street through the land of a private owner is not a taking of the land. It is simply the expression of a purpose to take it when occasion for the opening of the projected street arises. In this instance an interval of nearly 40 years occurred between the plotting and the opening of the street. Appellant's contention that the owner's compensation is to be measured by the market value of the land as of the date when the street was plotted finds no support in reason or authority. It is sufficiently answered in what we have said.

> Equally untenable is the other position taken, viz, that, if the true measure of compensation be the market value of the land when taken, the fact that no compensation could be recovered for the removal of any buildings erected on the bed of the proposed street after the same had been plotted is to be considered as a circumstance affecting such market value. This is simply asserting the right of confiscation in a modified form, only feebly disguised. By reason of the plotting the owner is virtually denied the privilege of building on his land, and it is argued that, with this privilege extinguished, the land would have a much reduced value in the estimation of the average buyer. Of course, it would. But who is responsible for this reduction? Not the owner. The impairment of value resulted from nothing he had done, but as the immediate consequence of the steps taken by the municipality towards the appropriation, in invitum, of the owner's land. In the present case it is quite clear that without the right to build upon the land, this narrow strip, 60 feet wide, located as it is, would be of little, if any, value. This, then, is the contention that the municipality in the furtherance of public

ends, having stripped the land of nearly its entire value, now, when it seeks to accomplish fully its purposes in connection therewith, is to be allowed to acquire the land by paying a sum measured by the little value the municipality has left in it. Such a result would be a travesty on the constitutional provision which requires in all such cases just compensation to be made for the property taken.

A similar case arose where the condemnor was not the municipality which had effected the "zoned right-of-way" and it was held in Hermann v. North Pennsylvania R. Co. (Sup. Ct. Pa., 1921) 113 A. 828 that —

We have repeatedly decided that no damages are collectable until a legal opening occurs, by the actual taking of land (Plan 166, 143 Pa. 414-423, 22 Atl. 669); but in Re South Twelfth Street, 217 Pa. 362, 366, 66 Atl. 568, 569, while acknowledging this rule, we recognize also that any "impairment of value" resulting from the plotting of a street in anticipation of its opening must be viewed "as the immediate consequence of steps * * * toward the [eventual] appropriation * * * of the owners' land." When the appropriation takes place, this "impairment of value" from these preliminary steps becomes merged, as it were, in the damages then payable; the matter being worked out practically, in assessing the damages, by simply ignoring the detrimental effect of the plotting, and treating the value of the property as though there had been no such harmful results.

If the course just outlined were not followed at the time of the appropriation, the law, in justice to the owner, would have to pursue the somewhat impractical method of considering two separate items: (1) The early impairment of value, suffered by the owner from the plotting; and (2) the damages to the real estate, as thus impaired, caused by the subsequent taking of the land. Otherwise, as said in Re South Twelfth Street, supra, we would have illegal "confiscation * * * feebly disguised." This complication is avoided, however, in the practical manner indicated.

While the Twelfth Street Case was an instance of appropriation of land by a municipality, the early plotting and subsequent taking being by the same corporation, yet, wherever real estate, containing a previously plotted, but unopened, street, is taken by the right of eminent domain, the principles announced in that authority must apply, or we would have the feebly disguised confiscation there referred to, and that to the benefit of the condemning corporation, which would pay for the land appropriated at its impaired value, and then, when the actual opening occurred, collect damages for such impairment; but, as previously noted, such an injustice is avoided by recognizing the fact that, although the impairment of value from the plotting is noncollectable, and no damages can be had by any one till the appropriation takes place, nevertheless all the while an inchoate right exists in the persons who own the land, so far as such impairment of value is concerned, the latter, as before said, being the "consequence" of "steps taken toward the appropriation."

Therefore, where the property is condemned for public use prior to the opening of the proposed street by a corporation other than the one which did the plotting this inchoate right is tacitly recognized and, in a manner, set off against any actual impairment of value caused by the plotting; but the desired result is accomplished in a practical way by treating the right as though merged in the real estate condemned, and appraising the latter as if it had suffered no depreciation — in other words, by ignoring the detrimental effect of the plotting.

All of which means simply that, conceding impairment of value, since he who owned the land at the time of the plotting could hold his property till the street was actually cut through, or, if he voluntarily sold, could make the purchaser equitably discount to him the future damages which the latter would presumably collect from the municipality, therefore, when another corporation, possessing the right of eminent domain, forcibly takes the real estate in question, before the proposed street is opened, and thus, without the owner's consent, deprives him of every opportunity to protect himself from the harmful results of the plotting, it must be recognized that such corporation also takes the owner's inchoate right in what the city eventually will pay to it for the damage done the property, and this it should pay for; but, as already stated, the practical method of working out the payment is the course followed by the court below.

When the facts at bar are treated along the lines suggested, there is no more difficulty about reaching the market value in this case than in South Twelfth Street.

To the same effect see also 26 Am.Jur.2d, *Eminent Domain* §169, pp. 843, 844 and cases cited.

When the Dade County "zoned right-of-way" provisions are correctly viewed as an integral step in a program of accomplishing its future widening of streets and ways the holding in State Road Department v. Chicone, 158 So.2d 753, is analogous. In that case, the actual market value under threat of condemnation was held not to be the measure of full compensation. Compare also, Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, 108 So.2d 74; Orgel on *Valuation under Eminent Domain,* vol. 1, 2nd ed., §1, pages 9-10, and footnote 14; Bassett, *Zoning,* chapter 4, p. 61; and Yokley, *Zoning Law and Practice,* vol. 1, 2nd ed., §163.

The authorities cited by the petitioner are not in point and are without merit on the issue here resolved.

Accordingly, it is the ruling of this court in advance of trial that full compensation for the taking of the parcels in the above styled cause shall be determined as though the said Dade County "zoned right-of-way" provisions had never been enacted and did not exist prior to and on the date of taking in this cause. The expert real

 151

estate appraisers who will testify in this cause may testify to whatever may be their opinion of the value contribution or fair market value of the part taken and damages if any to the remainder as to each parcel but such opinion must entirely disregard the said Dade County "zoned right-of-way" provisions and any limitations on the use of the properties involved herein, and the effect, if any, in diminishing actual market value which may have been caused thereby or result therefrom prior to or at the date of taking in this cause. No testimony or evidence shall be allowed directly or indirectly before the jury concerning the "zoned right-of-way" provisions or their effect, if any, on the use or value of the properties involved in this cause.