## KING v. UNITED STATES.

(Circuit Court, D. South Carolina. December 11, 1893.)

**1. FEDERAL COURTS—JURISDICTION—RESIDENCE IN DISTRICT.**
One having his business in a federal judicial district, and living therein for six months of the year in his own house, served by his own domestics, leaving during the unhealthy season for reasons of health only, is a resident of the district, and can sue in the courts thereof.

**2. EMINENT DOMAIN—FLOWAGE OF LANDS—GOVERNMENT DAMS.**
The flooding of a plantation by a government dam, so as to render it unfit for cultivation, is a taking for public use, requiring compensation, although the government actually occupies no part thereof.

**3. SAME—LIMITATION OF ACTIONS.**
Where water is thrown back by a government dam, on its completion, so as to flow a plantation, but the full effect in rendering the land unfit for cultivation is not ascertained until three years later, the six-years limitation does not begin to run until the latter time.

Petition by Mitchell King against the United States to recover damages for a flowage of lands. Judgment for petitioner.

Bryan & Bryan, for plaintiff.
W. Perry Murphy, for the United States.

SIMONTON, District Judge. This action was brought in this court under provision of Act Cong. March 3, 1887, c. 359, §§ 1, 2, etc.

### Findings of Fact.

(1) The above petition was in compliance with the requirements of Act March 3, 1887, c. 359, duly filed in the clerk's office, circuit court of the United States for the district of South Carolina, on the 19th day of January, 1893, and copies thereof duly served on the

United States district attorney and the attorney general of the United States, and said law in all respects complied with.

(2) Mitchell King, the plaintiff, is a rice planter on the Savannah river. He owns a plantation on the South Carolina side of the river, in Beaufort county. His sole occupation is cultivating this plantation. To this end, since 1890, he has been living upon it from November until the middle of May in each year, in a furnished dwelling house, and with domestic servants. After May 15th, he goes to Savannah,—the plantation then becoming unhealthy,—and lives in a boarding house; visiting his plantation at intervals, longer or shorter, as the state of the crop may require. He has registered and voted in Savannah, and does not vote in South Carolina.

(3) He owns in fee simple another plantation on the Savannah river, the subject-matter of this suit, particularly described in the complaint, known as "Red Knoll," formerly used exclusively in the cultivation of rice, situate on Argyle island, about 12 miles by river above the city of Savannah. This plantation has been cultivated in rice for very many years, and was in first-class order. It has been owned by plaintiff since 1881, contains 414 acres, and with the natural flow of the current of the Savannah river, and unimpaired drainage, is worth from $30 to $40 per acre, by market value.

(4) Plaintiff continued to plant rice since his ownership in 1881. His crops grew worse and worse, and in 1888 he abandoned the plantation, it having become unfit for cultivation. It is not now cultivated, except in small knolls or patches, and by colored people.

(5) On the Savannah river, where this plantation lies, the water is always fresh, and land below high-water mark is reclaimed from the river by dykes or banks. Through these banks are inserted trunks or wooden boxes, having flood gates in each of them, leading into canals and ditches through the reclaimed land. Through these the lands are irrigated, and through them, also, the lands are drained, when the time comes for draining the water off. The rise and fall of the tide (fresh water) contributed materially to this drainage.

(6) In ——— the United States government, in the lawful exercise of its powers of eminent domain and regulation of commerce, under appropriations made for several years, and now being made, by congress, for the purpose, and under the direction of the secretary of war, vested with full discretion by congress in the premises, erected, and are now erecting and maintaining, certain structures in the Savannah river, beginning at points below this plantation; said structures being intended both to deepen the channel, and to raise the natural level of the current of that river. One of these, and the most important, is the cross-tide dam between Hutchinson island and Argyle island, completed in 1885. This is the obstruction nearest to this plantation of plaintiff, being about six miles off.

(7) By reason of this obstruction, the direction of the current is changed, the force of the ebb tide in the river is diminished, and the fresh water is backed up towards the plantation of plaintiff, raising the level of the current above its normal, natural level from 12 to 18 inches at the banks of the said plantation. This result followed

the erection of the cross-tide dam, and the height of the water has remained the same since that time to the present.

(8) The first effect of this is to deprive the plantation of that much fall of the tide, and so diminish its drainage. Another result is that the trunks which theretofore necessarily had been placed just above the level of low tide came below that line. Another result was that by seepage the water pressed under the bank, and rose in the plantation, in a number of small springs, until gradually the water level in the land rose to the height of the increased water level in the river, and the superadded water in the plantation was 18 inches thereby.

(9) The general result is that, by reason of the diminished drainage capacity of the plantation, neither the water let in for the purposes of irrigation, nor overflows from freshets, nor the superadded water thus forced into the plantation by seepage, could be gotten off the land, which thereby and therefrom became sodden, sour, and boggy, gradually losing its productive power; so that in 1888 it became almost valueless, certainly for rice planting, and probably for any other known system of agriculture. This is its present and permanent condition, and its ordinary and necessary use for agriculture is destroyed.

(10) This gradual result was begun to be felt when the cross-tide dam was finished, and was experienced in 1885, 1886, and 1887, and gradually grew worse, and has existed continuously to the present time. The plantation was finally abandoned from these causes in 1888.

(11) Beyond the backing up of the water on and in the plantation by reason of the obstructions, and this invasion of these lands by this superadded water around and in the plantation as above described, rendered necessary by the execution of the government plans as set forth above, the United States government has not and does not use these lands for any purpose, nor is it in possession of them, or any part of them.

(12) That the purpose of raising the waters of the Savannah river, and backing the waters thereof at and upon, around and in the plantation of the petitioner, is for the improvement of the harbor of Savannah, and deepening the waters of the Savannah river at the port of Savannah, a port of entry of the United States, situated within the state of Georgia, on the Savannah river,—a navigable river of the United States.

(13) The difference between the market value of the said plantation described in the petition before the obstructions of the United States government, above set forth, and the value of the plantation after the said obstructions and the backing of the waters of the Savannah river upon, at, in, and around said plantation, is the sum of $10,000, the amount claimed by the petitioner.

The district attorney, in behalf of the United States, entered his motion to dismiss the petition on these grounds: (1) Because the plaintiff is not a resident of this district, and for this reason the court has no jurisdiction on his claim. (2) That his cause of ac-

tion accrued in 1885, when the cross-tide dam was erected, more than six years before he filed his petition, and he cannot maintain his suit. It is a condition precedent to his right to sue that the cause of action accrued within six years prior to his suit. (3) That the evidence discloses no such taking of the plaintiff's land for public purposes as brings him within the fifth amendment and so entitled to compensation.

### Conclusions of Law.

1. The plaintiff having his business in South Carolina, remaining in that state six months in the year, with a house in which he lives, and domestics by whom he is served, leaving during the unhealthy season for health only, is a resident of this district, and the court has jurisdiction on his claim.

2. Although the water in Savannah river was raised and thrown on the plantation when the dam was built, in 1885, the full consequences were not ascertained and realized until 1888, when the plantation was abandoned. In that year the cause of action was complete. This action, begun in 1893, is within the statutory period of six years.

3. The government has not gone into actual occupancy of this land. But by reason of this public work, occasioned by the public work fulfilling its purpose, the water in the Savannah river has been raised at plaintiff's land, has been backed on it so that the drainage has been destroyed, the water kept on the land, and forced up into it, making it finally wholly unfit for cultivation. This is a taking of the land for public purposes, for which compensation must be provided. Pumpelly v. Green Bay Co., 13 Wall. 181.

4. The claimant is entitled to his damages, $10,000. Let judgment be entered accordingly.