**CHEVES et al. v. WHITEHEAD, United States Game Protector.**

No. 297.

District Court, S. D. Georgia, Savannah Division.

July 13, 1932.

H. Wiley Johnson, of Savannah, Ga., for complainants.

Chas. L. Redding, U. S. Dist. Atty., of Savannah, Ga., for respondent.

BARRETT, District Judge.

Cheves and others, all citizens of South Carolina, bring their bill of complaint in equity against E. B. Whitehead, a citizen of Georgia, and allege that petitioners own and are in possession of 414 acres of land in Chatham county, Ga., on the Savannah river known as "Red Knoll" plantation; that since 1903 the owners have received rent from said plantation and have paid taxes thereon; such plantation "includes 23 acres of knolls or highlands suitable for building sites, pasturage, and ordinary argricultural purposes," and the remainder is "composed of uncleared swamp land and marsh land"; said plantation had been used for many years for the cultivation of rice, but was in the year 1888 abandoned for such use by the then owner, Mitchell King, because of the impairment of the drainage of such land, to an extent destroying its suitability for rice culture, resulting from certain work done by the United States in improving the Savannah river for navigation; that in 1893 Mitchell King recovered of the United States damages in the sum of $10,000 as compensation for taking of property for public use without paying therefor; that the report of such suit is found in King v. United States (C. C.) 59 F. 9–12, and Nos. 3, 11, and 13 of the findings of fact and No. 4 of the conclusions of law therein are quoted; "* * * that the United States has never had title, possession, or use of said Red Knoll plantation either before or since the decision and judgment in the above stated case of Mitchell King v. United States, and has never claimed or asserted any right or title to said lands until the acts hereinafter complained of; and the United States now has no right or title thereto and no interest therein except the easement or right of flowage of the lands of Red Knoll plantation in the manner and to the extent made necessary by the harbor improvement work in the Savannah River recited in the findings and decision of the court in said case"; that the original Savannah river bird refuge was established in 1927, and did not include Red Knoll plantation; that on November 12, 1931, an executive order was passed which undertook to include in such refuge such plantation; that such executive order "was without any right, title, or authority of law, and the same is unconstitutional and void insofar as it describes and embraces the Red Knoll plantation"; that such order prohibited the use or entering on said land and declared the criminal liability that would result from the disobedience of such order; that E. B. Whitehead is United States game protector having charge of such refuge, and he has placed on said land signboards designating the said property as "United States Wild

Life Refuge," notwithstanding he knew that the title and possession of said land is in petitioners subject only to the easement of flowage acquired by the United States in the said case of King v. United States; that said Whitehead threatens to criminally prosecute petitioners who may remove or cause to be removed such signs; that such threatened prosecutions deprive petitioners of their property without due process of law, and will subject petitioners to a multiplicity of criminal prosecutions; that petitioners have no adequate remedy at law; that they have urged the officials of the United States to bring an action of ejectment, but they have failed to do so, and these petitioners cannot compel the United States to institute such suit nor can they institute such suit against the United States.

The prayers are for subpœna, injunction against Whitehead from instituting criminal proceedings for taking down such signs, and for general relief.

The defendant moves to dismiss on the following grounds:

"1. Because said bill is nominally against E. B. Whitehead, as United States Game Protector but actually against the United States and particularly involves property of the United States and is a suit against the United States and against their property and is brought without the consent of the United States and without the authority of any act of Congress.

"2. Because said bill of complaint is in the nature of an action of trespass to try title to lands owned in fee simple by the United States and is brought without the authority of the United States and not within authority granted by any act of Congress.

"3. Because there is insufficiency of fact to constitute a valid cause of action in equity against the defendant.

"4. Because the court is without substantive jurisdiction over the subject matter of the complaint.

"5. Because upon the allegations of the bill of complaint the plaintiffs are not entitled to equitable relief by injunction.

"6. Because the allegations contained in plaintiff's bill set forth in substance that plaintiff will suffer consequential damages and this court is without jurisdiction to entertain such a suit.

"7. Because the subject matter of this complaint is the title to Red Knoll Plantation, which title has been heretofore declared in the United States in 'a proceeding against the United States to recover damages in the sum of $10,000.00 for the flowage of the Red Knoll Plantation lands caused by the harbor improvement work,' to wit, that certain proceeding decided in King v. United States (C. C.) 59 F. 9–12, wherein the court in his conclusions of law held, 'This is a taking of the land for public purposes for which compensation must be provided,' which conclusion of law was based upon Pumpelly v. Green Bay & M. Canal Co., 13 Wall. 181, 20 L. Ed. 557; said instant proceeding therefore is res judicata.

"8. Because in the instant complaint the plaintiffs allege that they are successors in title to Mitchell King, who brought an action in the Circuit Court, D. South Carolina, January 19, 1893, in compliance with the requirements of the Act of Congress of March 3, 1887, c. 359, for the taking of the same lands involved and described in the instant complaint by the overflowage of said lands as a result of certain improvements made in the Savannah River, in which proceedings the court in his conclusions of law held that said lands had been made 'wholly unfit for cultivation' which said action amounted to 'a taking of the land for public purposes' and awarded compensation therefor in the sum of $10,000.00, said instant complaint seeking to raise an issue that in said former action, to wit, King v. United States (C. C.) 59 F. 9, the United States had acquired only an easement, whereas said court in said action held that there had been 'a taking of the lands' and said instant cause of action is therefore res judicata."

1. The propriety of overruling motions to dismiss 1 and 2 is shown by reference to the following cases, without amplification: United States v. Lee (Kaufman v. Lee) (2 cases) 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 S. Ct. 340, 56 L. Ed. 570; Miller v. Standard Nut Margarine Co. of Florida (C. C. A.) 49 F.(2d) 79; Standard Nut Margarine Co. v. Rose, Collector (C. C. A.) 49 F.(2d) 85; National Remedy Co. v. Hyde, Secretary Dept. of Agriculture, 60 App. D. C. 252, 50 F.(2d) 1066 (4). There is nothing inconsistent in this conclusion with the case of Hurley v. Kincaid, 285 U. S. 95, 52 S. Ct. 267, 76 L. Ed. 637, for the extent of that decision was merely that equity could not entertain jurisdiction because there was an ample remedy at law, namely, the right to recover compensation under the Tucker Act (24 Stat.

505), and that such remedy was "plain, adequate and complete." The question as to whether a suit could prevail against an officer of the United States who was engaged in effecting a plan of the United States was not decided.

2. The determination of the other motions to dismiss will result from a decision as to whether the United States acquired, as a result of the suit of King v. United States, an easement to overflow or the fee-simple title to the land.

The case of King v. United States was appealed, but the appeal was dismissed, 164 U. S. 703, 17 S. Ct. 1001, 41 L. Ed. 1182.

Defendant contends that the case of United States v. Lynah, 188 U. S. 445, 23 S. Ct. 349, 350, 47 L. Ed. 539, is identical in substance, though not in totidem verbis, with the King Case, and that thereby it is conclusively established by the Supreme Court of the United States that the *title* to Red Knoll plantation is in the United States.

It cannot be fairly denied that certain language in the opinion in the Lynah Case warrants such contention. See pages 468, 471, and 474 of 188 U. S., 23 S. Ct. 356, 357. But other language indicates, if not declares, the contrary. Language reveals its true meaning only when its context and the conditions of its utterance are known. One of the basic jurisdictional allegations in the Lynah Case is your petitioners have a "claim against the United States under an implied contract for compensation for the value of property taken by the United States for public use."

The first paragraph of the opinion of Circuit Judge Simonton, who tried the Lynah Case, is as follows: "This is a proceeding under the Act of Congress, March 3, 1887, giving this court co-ordinate jurisdiction with the Court of Claims in certain causes of action against the United States. The object of the proceedings is to obtain just compensation for certain lands alleged to have been taken by the Government for public purposes. The cause of action is on the implied contract arising from such alleged taking to give just compensation therefor, under the Fifth Amendment."

The following are among his conclusions of law:

"V. The crucial question in this case is, was there a taking of this land in the sense of the Constitution?

"The facts found show that by reason of the obstruction in the Savannah River, the water has been directly backed up against the embankment on the river and the banks on and in this plantation, the superinduced addition of water actually invading it and destroying its drainage and leaving it useless for all practical purposes. The Government does not in a sense take this land for the purpose of putting its obstructions on it. But it forces back the water of the river on the land as a result necessary to its purpose, without which its purpose could not be accomplished. For the purpose of the Government that water in the river must be raised. The banks of this plantation materially assist this operation, for by their resistance the water is kept in the channel. The backing up of the water against the banks to create this resistance raises the water in the plantation and destroys the drainage of the plantation. This is a taking. 'It would,' says Mr. Justice Miller, 'be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government and which had received the commendation of jurists, statesmen and commentators as placing the just principles of the common law on that subject, beyond the power of ordinary legislation, to change or control them, it shall be held that if the Government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can in effect subject to total destruction without making any compensation, because in the narrowest sense of that word it has not been taken for the public use.' Pumpelly v. Green Bay Co., 13 Wall. 177 [20 L. Ed. 557]. In that case the backing up of water on land was held to be a taking.

"VI. The plantation of plaintiffs being actually invaded by superinduced addition of water directly caused by the Government dams and obstructions backing up the water of the Savannah River and raising the water level at and in the rice plantation and making it unfit for rice cultivation or for any other known agriculture, and plaintiffs having been compelled thereby to abandon the plantation and this actual and practical ouster of possession being continued and permanent by reason of the permanent condition of the flooding of the plantation, and the plantation being thereby now an irreclaimable bog of no value, makes the action of the Government a taking of lands for public purposes within the meaning of

the Fifth Amendment, for which compensation is due to the plaintiffs. Pumpelly v. Green Bay Co., 13 Wall. 182 [20 L. Ed. 557]; Mugler v. Kansas, 123 U. S. 668 [8 S. Ct. 273, 31 L. Ed. 205].

"VII. The Government has not gone into actual occupancy of this land, but by reason of these dams and obstructions made necessary by this public work and fulfilling its purpose the water in the Savannah River has been raised at the plaintiffs' plantation and has been backed up on it and remains on it so that the drainage has been destroyed and ditches filled up and super-added water permanently kept on the land and forced up into it making it wholly unfit for cultivation, and the plaintiffs have thereby been practically and actually ousted of their possession. This is taking of the land for public purposes, for which compensation must be provided. Pumpelly v. Green Bay Co., 13 Wall. 181 [20 L. Ed. 557].

"VIII. The plaintiffs are entitled to just compensation for the taking of the 420 acres of rice land. This is estimated to be ten thousand dollars, the value of the land so taken, for which amount let the plaintiffs have judgment."

The opening paragraph of the opinion of the Supreme Court is: "There are three principal questions in this case: First, did the Circuit Court have jurisdiction; second, was there a taking of the land within the meaning of the Fifth Amendment; and, third, if there was a taking, was the government subject to the obligation of making compensation therefor?"

The treatment of the second is the only one applicable here. Full weight must be given to this language on page 468 of 188 U. S., 23 S. Ct. 349, 356: "Was there a taking? There was no proceeding in condemnation instituted by the government, no attempt in terms to take and appropriate the title. There was no adjudication that the fee had passed from the landowner to the government, and *if either of these be an essential element in the taking of lands,* within the scope of the 5th Amendment, there was no taking." (Italics mine.)

It is true that the opinion contains this language: "Of course, it results from this that the proceeding must be regarded as an actual appropriation of the land, *including the possession, the right of possession, and the fee;* and when the amount awarded as compensation is paid, the title, the *fee,* with whatever rights may attach thereto—in this case those at least which belong to a riparian proprietor—pass to the government and it becomes henceforth *the full owner.*" (Italics mine.)

But the meaning of this must be interpreted by the aid of its context, especially the two preceding sentences in this very paragraph: "It is clear from these authorities that where the government by the construction of a dam or other public works so floods lands belonging to an individual as to substantially destroy their value there is a taking within the scope of the 5th Amendment. While the government does not directly proceed to appropriate the title, yet it takes away the use and value; when that is done it is of little consequence in whom the fee may be vested."

The dissenting opinion discloses that the issue was, not whether the title passed, but "Was there a taking?"

█ Acquisition of title is not essential to "taking," nor is total destruction of value essential. Impairment of value is sufficient. Lynah Case, supra, flooding; United States v. Welch, 217 U. S. 333, 30 S. Ct. 527, 54 L. Ed. 787, 28 L. R. A. (N. S.) 385, 19 Ann. Cas. 680, easement of private way; Portsmouth Harbor Land & Hotel Co. v. United States, 260 U. S. 327, 43 S. Ct. 135, 67 L. Ed. 287, servitude of firing projectiles from large guns; Hurley v. Kincaid, 285 U. S. 95, 52 S. Ct. 267, 76 L. Ed. 637, use for outlet of excessive flood waters occurring only at long intervals; Payne v. Kansas & A. Val. R. Co. (C. C.) 46 F. 546 (11), additional servitude. 10 R. C. L. p. 71 et seq.

"It is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking." United States v. Cress, 243 U. S. at page 328, 37 S. Ct. 380, 385, 61 L. Ed. 746, in connection with a discussion of the Lynah Case. Jacobs v. United States (5th C. C. A.) 45 F.(2d) 34 (5).

Mutatis mutandis is not the true meaning of the Lynah Case embodied in headnote 3 of the Cress Case, 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746: "That, upon payment, the United States would acquire an easement to overflow the land as often as would necessarily result from the use of the lock and dam for navigation, the fee, however, remaining in the private owner."

█ By payment of the compensation found as damages, the government acquired the same rights and *no more* than would have

resulted from condemnation proceedings. United States v. Cress, supra, 243 U. S. page 329, 37 S. Ct. 380, 61 L. Ed. 746.

If " *  :  less than the whole has been taken and is to be paid for, such a right or interest will be deemed to pass as is necessary fairly to effectuate the purpose of the taking." Cress Case, supra, 243 U. S. page 329, 37 S. Ct. 380, 61 L. Ed. 746.

█ "Where the interest to be taken is not expressly stated, the condemnor is presumed to take no greater interest than an easement where an easement is sufficient to satisfy the purposes of the taking." 20 C. J. 1223. See, also, 2 Lewis on Eminent Domain (3d Ed.) §§ 449, 451; Harris v. Elliott, 35 U. S. (10 Pet.) 25, 9 L. Ed. 333.

█ "A condemnor taking a right of flowage acquires only an easement in the land flowed." 20 C. J. 1229.

Confusion in the Lynah Case came from the effort of the author to prove that there was a "taking," and it was shown for such purpose that the total value of the property, so far as its uses were then known, had been destroyed. The question as to whether there could be a "taking" when less than the entire property was taken was not under consideration.

█ "Compensation" and "damages" are practically equivalent. 20 C. J. 642. Would any court hold that, because property had been damaged, therefore the title passed out of the owner into the wrongdoer? What better reason is there for concluding that when compensation has been paid for "taking" property to the extent of acquiring an easement of overflow, this served to convey title to the party causing the overflow?

Is it conceivable that, had the United States sought to condemn this land for purposes of overflow (and it certainly then needed it for no other public purpose), it would have failed to so designate in its proceeding. Having taken it for such purpose in fact it acquired only the easement of so doing, according to the principle cited above from 20 C. J. 1223.

The United States could not at that time have had in contemplation the taking of this land for use as a wild life preserve, for there was no law on the subject at that time.

At the time of such taking, it is probable almost to a certainty that the possibility of discovering oil under this land was not considered, either in the overflow or in establishing the amount of compensation. Other values may be existent in the use of the fee that would in no way interfere with the easement of flowage whose value was not considered in the determination of the King Case. Minerals of various kinds may be under the surface, a fine fishing property might by the overflow or otherwise develop, or a fine private game preserve created or produced.

No reason occurs to me as to why the United States should acquire what it did not wish, did not seek, and did not pay for.

" *  *  * When by reason of the existence of minerals or oil underneath the surface which can be taken out without interfering with the public easement, the fee has a real and substantial value, the condemning party is not bound to pay the full value of the land taken, but merely the decrease in market value that is due to the imposition of the public easement." 10 R. C. L. 134.

A narrower reason for reaching the same result is found in the obvious differentiation between the King and Lynah Cases above. Nothing further need be dwelt upon than *the finding of fact* in the King Case that $10,000 was the *difference in the value of the property before and after the overflow* had been established. It has been more satisfactory to me to endeavor to ascertain the real meaning of the Supreme Court. As I view it, I must be controlled by the interpretation given the Lynah Case by the defendant in this case and thereby disregard the decision of such court in the Cress Case, supra; or must seek a reconcilement of the two and obey the result. This I have done. My conclusion is that the Cress Case is consistent with the real meaning of the Lynah Case, and that is, that, while the amount of damages should be measured by the value destroyed, there will be no taking of the fee when an easement is all that is sought or when there is indefiniteness as to what was taken. This leads to the conclusion that the other grounds of the motion to dismiss should be overruled.