Miller, Appellant, *v.* Beaver Falls.

Argued May 21, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*W. Denning Stewart,* for appellants.

*J. Leonard Solomon,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE BELL, June 27, 1951:

This appeal involves the constitutionality of an ordinance dated April 10, 1950 enacted pursuant to the Act of June 23, 1931, P.L. 932, known as "The Third Class City Law", Art. XXXVII, §§ 3701, 3702, 53 P.S. § 12198-3701, 3702. Appellants purchased 16 acres of ground in the 6th Ward of the City of Beaver Falls on *April 8, 1950.* Either their predecessor in title or the holder of a mortgage on said property notified the City on *November 23, 1949* that the property had been purchased for immediate development; that the purchasers intended to erect 72 dwellings thereon; and requested City Council to install sewers in accordance with a plan and to connect the sewers with a public sewer. The property was on a *recorded plan* of lots, with streets and alleys laid out.

On *April 10, 1950,* the City Council—after notice (of November 23, 1949) of the owners' intention to erect houses on the land in question—passed an ordinance, No. 960, adopting *a general plan for parks* and playgrounds of the City of Beaver Falls "including those which have been or may be laid out but not opened". A plan of the parks and the playgrounds was attached to and made a part of the ordinance. Appellants knew that such an ordinance had been introduced in Council and had passed first reading when they actually settled for the property. Several months prior to this time appellants' predecessor had begun the construction of 12 houses on a portion of the 16 acres of their land, but had not commenced the erection of any dwellings on the approximately 4½ acres of land which was covered by the above mentioned ordinance.

Section 3701 of the Act of June 23, 1931, supra, reads (page 1084) : ". . . No person shall hereafter be entitled to recover any damages for the taking for public use of any building or improvements of any kind which may be placed or constructed upon or within the lines of any located park or playground, after the same shall have been located or ordained by council."

Section 3702 of the Act of June 23, 1931, is as follows : "Whenever any park or parkway may hereafter be superimposed upon the confirmed plan of the streets or parks of any city, in sections not entirely built up, by ordinance of council, unless an ordinance *actually appropriating the land** within the lines of said park or parkway to public use is duly passed by council thereof, *or said land is acquired by council, within three years* from the passage of said ordinance superimposing said plan upon said land, said ordinance superimposing said plans upon said land shall be void and of no effect, . . .". The city has not condemned the property under its

* Italics throughout, ours.

power of eminent domain nor made any appropriation of funds for the purpose of paying damages for any property which might be taken as a result of the aforesaid ordinance.

Plaintiffs filed a bill in equity for a decree declaring that Ordinance No. 960 was an encumbrance on their property and a cloud upon their title and was unconstitutional and void. The court, after hearing, found that parks and playgrounds are not only desirable but have become a modern necessity and that the establishment of a park and playground on the property here involved was desirable and necessary to the development, growth and expansion of the city, and dismissed plaintiffs' bill.

The question raised is a very important one. Planning the future development or the building of a City Utilitarian and Beautiful, for present and future generations, has become the fashion of the day. There is no doubt that parks have a beneficial effect on public health and public welfare and their establishment and maintenance is certainly desirable. Moreover, the public interest should be favored over private interests whenever reasonably possible, if and when they conflict. However, it must not be forgotten that all acts of the legislature and of any governmental agency are subordinate to the Constitution, which is the Supreme Law of the land; and therefore no matter how desirable the act may appear or how worthy the objective, it cannot be sustained if it is interdicted by the Constitution. It is well known that the Constitution of the United States and the Constitution of Pennsylvania provide for the protection and maintenance of liberty, but it is not so well known or remembered that they likewise contain specific provisions for the protection of private property.

The Constitution of Pennsylvania provides in Article I, §1: "All men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, *of acquiring, possessing and*

*protecting property. . . ."* Article I, §10 provides: *". . . nor shall private property be taken or applied to public use, without . . . just compensation being first made or secured".*

Article XVI, §8 provides: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction".

The Fourteenth Amendment to the Federal Constitution provides: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law".

The mandate of these constitutional provisions is clear: *Private property cannot be taken for or applied to public use without just compensation being first paid or secured.* It has long been well settled that the mere plotting of a *street* upon a city plan without anything more does not constitute a taking of land in a constitutional sense so as to give an abutting owner the right to have damages assessed. The doctrine is said to be founded upon equitable considerations and a wise public policy; *Philadelphia Parkway,* 250 Pa. 257, 261, 95 A. 429; *Scattergood v. Lower Merion Township Commissioners,* 311 Pa. 490, 167 A. 40; *Caplan's Appeal,* 293 Pa. 483, 143 A. 134; *Philadelphia Parkway Opening,* 295 Pa. 538, 145 A. 600.

Shall this principle relating to streets, which are narrow, well defined and absolutely necessary, be extended to parks and playgrounds which may be very large and very desirable but not necessary? The injustice to property owners of permitting a municipal body to tie up an owner's property for three years must

be apparent to everyone.* The city can change its mind and abandon or refuse to take the property at the end of three years; but in the meantime the owner has been, to all intents and purposes, deprived of his property and its use and the land is practically unsalable. He cannot build thereon because if he does the law is clear that he cannot recover damages for the loss of any building erected within the plotted line: *Scattergood v. Lower Merion Township Commissioners,* 311 Pa. 490, 167 A. 40; *Bush v. McKeesport,* 166 Pa. 57, 30 A. 1023; *Philadelphia Parkway Opening,* 295 Pa. 538, 145 A. 600. At the present time there is a widespread demand for homes, but no one can foretell what conditions will exist at the end of or within the next three years. Our country may be at war or, because of the war effort or a scarcity or allocation of materials, the owner may not be able to erect dwelling houses at that time, and even if he can, there is the likelihood, because of mounting inflation, that the cost will be very greatly increased over the cost today and for this reason may be prohibitive.

The action of the City of Beaver Falls in plotting this ground for a park or playground and freezing it for three years is, in reality, a taking of property by possibility, contingency, blockade and subterfuge, in violation of the clear mandate of our Constitution that property cannot be taken or injured or applied to public use without just compensation having been first made and secured. The contention of the City in this case, if adopted, would make a travesty of the constitutional provisions protecting rights of property.

The law with respect to streets is too firmly established in Pennsylvania to be changed, but that is no

---

* Cf. *Chelten Trust Co. v. Blankenburg,* 241 Pa. 394, 396, 88 A. 664, where a delay of a year and three months by city officials, after passage of an ordinance appropriating certain land for use as a park, was held to be both unreasonable and unlawful.

reason or justification for extending it. In *Harrison's Estate*, 250 Pa. 129, 95 A. 406, the Court said (page 132): "It may be, as learned counsel for appellant so ably contend, that the profession have assumed the constitutionality of the Acts of 1871 and 1891 [which relate to the right of municipal corporations to locate *streets* without compensation to the owner of the land until there is actual taking] to be a settled question *without giving due consideration to our bill of rights and to the Fourteenth Amendment of the Federal Constitution.* . . . What was said by this court in Bush v. McKeesport, 166 Pa. 57, is applicable here: 'If the question, intended to be raised by appellants, were an open one, much might be said on both sides, but we think the underlying principle has been too long and firmly settled in this State adversely to plaintiffs' contention, to justify us in holding that any new principle was introduced, or change in the law effected, by the clause quoted. . . .' The clause referred to is that provision of the Act of 1891 which declares that damages cannot be recovered for any buildings or improvements 'placed or constructed upon or within the lines of any located street or alley, after the same shall have been located or ordained by councils.' *It is true that the effect of the bill of rights, and of the fourteenth amendment, was not discussed in that opinion, nor perhaps in the other cases in which the constitutionality of this and other similar acts are involved,* but . . . we . . . must regard the question here raised as settled in our jurisdiction". See to the same effect: *Philadelphia Parkway Opening,* 295 Pa. 538, 543, 145 A. 600. The *tendency to limit* this right to take private property or limit its development or use without payment of compensation is indicated in *Sansom Street, Caplan's Appeal,* 293 Pa. 483, 143 A. 134. In that case a city ordinance forbade the erection of buildings on Sansom Street without recession to a new line which would have

made it impossible for the plaintiff-relator to build on the remnant of his lot. The Court decided that in such case the rule—that the mere plotting of a city street upon a city plan without anything more does not constitute a taking in the constitutional sense—did not apply, and held the property owner had been deprived of his property and was immediately entitled to damages. Mr. Justice, later Chief Justice SCHAFFER, in his opinion, after calling attention to the provisions of the Constitution of Pennsylvania, said (page 490) : "The governing principle is accurately stated in 20 Corpus Juris, 566, 'There need not be an actual, physical taking, *but any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking* for which compensation must be made to the owner of the property.' "

It follows that the aforesaid cases involving a plotting of streets should not and do not provide authority for an extension of the principle or doctrine therein enunciated. A principle of questionable constitutionality should not be extended beyond its present application or limitation especially if such extension would violate either the letter or the spirit of the Constitution. "The law as to what constitutes a taking has been undergoing a radical change during the last few years. Formerly it was limited to the actual physical appropriation of the property or a divesting of title, but now the rule adopted in many jurisdictions and supported by the better reasoning is that when a person is deprived of any of certain rights in and appurtenant to tangible things, he is to that extent deprived of his property, and his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; 'and it may be laid down as a general proposition, based upon the nature of property itself, that, *whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged*

*or destroyed by reason of the exercise of the power of eminent domain, his property is, pro tanto, taken, and he is entitled to compensation'* " [Cheves v. Whitehead, 1 F. Supp. 321] : 11 McQuillin, Municipal Corporations (3rd ed.) §32.26, p. 312. As the Court of Appeals of New York, in *Forster v. Scott,* 136 N.Y. 577, 32 N. E. 976, in a case involving a statute (very similar to Section 3701 of the Act of June 23, 1931, supra) which it held to be "in conflict with the provisions of the Constitution for the protection and security of private property" so aptly said (page 584) : "What the legislature cannot do directly it cannot do indirectly, as the constitution guards as effectually against insidious approaches as an open and direct attack. Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, without legal process or compensation, it deprives him of his property, within the meaning of the constitution. All that is beneficial in property arises from its use and the fruits of that use, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession. It is not necessary, in order to render a statute obnoxious to the restraints of the constitution, that it must, in terms or in effect, authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment, or the power of disposition at the will of the owner."

As Mr. Justice HOLMES said in his opinion in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S. Ct. 158 (in which he declared the Kohler Act of May 27, 1921, P. L. 1198 unconstitutional) : "The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. Hairston v. Danville & West-

ern Ry. Co., 208 U.S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, the *natural tendency of human nature is to extend the qualification more and more until at last private property disappears*. But that cannot be accomplished in this way under the Constitution of the United States".

"While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. *'We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change'* : Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 416" : *White's Appeal,* 287 Pa. 259, 266, 134 A. 409.

The city is not without a remedy, but it cannot eat its cake and have its penny too. If it desires plaintiffs' land for a park or playground which it considers desirable or necessary for its future progress, it can readily and lawfully obtain this land in accordance with the Constitution which, we repeat, is the Supreme Law of the land. The Constitution of the United States and the Constitution of Pennsylvania empower the city to take and appropriate private land for public purposes. *All that is required is that just compensation be paid therefor.* . We do not propose that our Federal or State Constitution shall be disregarded or nullified either directly or by subterfuge, even though the purposes and objectives of a legislative act are worthy and sincerely believed to be in the best public interest.

Section 3702 of the Act of June 23, 1931, P. L. 932, which gives Councils in third class cities a three year locus penitentiae in taking private property for a park— three years to change their mind or pay—is hereby declared unconstitutional and the Ordinance of the City

of Beaver Falls No. 960 is hereby declared unconstitutional and void.

Judgment reversed; costs to be paid by appellee.