## Commonwealth v. Spear

*Daniel J. Lawler*, for Commonwealth.

*Edmund V. Ludwig*, for petitioner.

BIESTER, P. J., October 8, 1965.—On December 23, 1964, in response to a petition by Burton Spear and Catherine Spear, his wife, this court appointed viewers directing them to view the premises of petitioners, hold hearings and file a report, and award just compensation to petitioners pursuant to the provisions of the Eminent Domain Code of June 22, 1964, P. L. 84, 26 PS §1.101, et seq. The Commonwealth of Pennsylvania has filed "Preliminary Objections in the Nature of Motion to Dismiss Petition and Discharge Viewers", alleging that there has been no condemnation within the purview of the Eminent Domain Code, and that the owners have suffered no compensable injury justifying the appointment of viewers.

The matter is now before the court, after argument, on these preliminary objections.

From the pleadings filed and certain stipulations entered into between counsel for the respective parties, the following facts may be extracted:

Petitioners are the owners of buildings and improvements situate on approximately 80 acres of land in Doylestown Township, this county. This property was acquired by two deeds, one dated September 11, 1961, and the other February 15, 1963. Their immediate predecessor in title was the Elmi Corporation which, on January 27, 1961, during its period of ownership, procured plans drawn by Harris, Henry and Potter, Inc., registered engineers, dividing the premises in question into 71 building lots and delineating several roads or streets which, prospectively, permitted ingress and egress to and from the lots laid out on the plan. This plan of lots for the proposed development was presented to the Doylestown Planning Commission and the Bucks County Planning Commission, and was

recommended for approval, subject to the submission of the report of the Bucks County Department of Health respecting the feasibility of on-lot water and sewage systems.

On October 28, 1964, the Secretary of Highways, for the Commonwealth of Pennsylvania, with the approval of the Governor, officially designated the future location and width of L. R. 1062 and L. R. 1068 (known respectively as Routes 202 and 611 by-passes), and thereafter filed plans of said highways in the Office of the Recorder of Deeds of Bucks County. Shortly after the filing of these plans, the Department of Highways sent a letter to petitioners attaching a portion of the plan showing how the petitioners' property "is to be affected". This letter quotes, in part, from section 219 of the State Highway Law of June 1, 1945, P. L. 1242, 36 PS §670.219, as follows:

"No owner or occupier of lands, buildings, or improvements shall erect any building or make any improvements within the limits of any State highway the width and lines of which have been established and recorded as provided in this section, and if any such erection or improvement shall be made no allowance shall be had therefor by the assessment of damages".

The letter further states:

"Please note that your land has *not* been condemned; rather, the Commonwealth has signified its intention to construct the aforesaid highway improvement at some future time, probably within five (5) years. Prior to any actual condemnation of your property, the Department employees will contact you to negotiate the purchase of that portion of your property required for the highway project".

After receipt of this letter, and carefully following the provisions of the recently adopted Eminent Domain Code, petitioners in writing granted the Department of Highways the right of entry and possession, in

accordance with section 407 (b) of the code, and then filed a petition requesting the court to compel the condemnor to file a declaration of estimated just compensation.

The petition for the appointment of viewers is presented under section 502 (e) of the code, which provides:

"If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury".

Basically, it is the contention of the Commonwealth that until there be a condemnation of petitioners' property, it is inappropriate for the court to appoint viewers to assess any damages and, since the Commonwealth has asserted no title whatsoever to the property of petitioners, nor entered upon, nor appropriated any part of it, that there has been no actual taking; that is to say, no physical appropriation and, therefore, no condemnation of the property involved.

Petitioners, on the other hand, maintain that although there has been no declaration of taking, their property has been condemned within the definition of that word contained in the Eminent Domain Code, which wordage was clearly suggested by article XVI, sec. 8, of the Pennsylvania Constitution, that a condemnation means a taking, injuring or destroying private property by authority of law for public purpose.

It appears to us to be completely unrealistic to say that the property rights of petitioners have not been adversely affected by the proceedings so far taken. In effect, the Commonwealth has said to the Spears that their right of enjoyment and contemplated use of their property in any way they see fit must remain in a state of suspension for an indeterminate period until when, as, and if it is decided that the declaration of taking

be filed. At the expiration of this period of time, whatever it may be, the owners may again use the property as they see fit, assuming the Commonwealth does not file a declaration of taking in the interim. Meanwhile, the owners are permitted to retain their legal title and to have the obligation of paying their taxes, insurance, interest on the mortgage and other charges on the land, but may not build upon their land, and the title to their property becomes, if not clouded (see Frontage, Inc. v. Allegheny County, 400 Pa. 249, 258), at least such as to make it almost impossible for them to proceed with any development of the land, or to sell any part thereof; for the plans of the Department of Highways, as filed, clearly indicate that the limited by-passes are plotted and drawn as rights of way over and across numerous building lots, planned streets and frontage of the Spear property. Quoting the rather callous language of the Commonwealth's brief: "Petitioners in the instant case may continue to use their land as heretofore . . . at the same time landowners are given the opportunity to change their plans and conserve their energies from fruitless and futile labors".

Our State and Federal Constitutions ordain, protect and guarantee the ownership and use of private property: United States Constitution Amendment V; article I, secs. 1 and 10 of the Constitution of Pennsylvania: Andress v. Zoning Board of Adjustment, 410 Pa. 77, 83.

The Constitution of Pennsylvania provides in article I, sec. 1:

"All men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property. . . ."

"It is clear beyond the peradventure of a doubt that the ownership and possession of private property necessarily includes its lawful use—it would be of little

or no value unless the owner can deal with and use it as he desires, so long as its use is lawful": Cleaver v. Board of Adjustment, 414 Pa. 367, 371.

It follows that "An owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home [or property] in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional": Lord Appeal, 368 Pa. 121, 125; Lened Homes, Inc. v. Philadelphia Department of Licenses and Inspections, 386 Pa. 50, 54; Lhormer v. Bowen, 410 Pa. 508, 512. Subject to these limitations: "Neither the Executive nor the Legislature, nor any legislative body, . . . nor any other Governmental body has the right . . . *to take, possess, or confiscate private property for public use or to completely prohibit or substantially destroy the lawful use and enjoyment of property, without paying just compensation therefor*": Andress v. Zoning Board of Adjustment, supra, page 84.

A "taking" of property, for which compensation must be paid, does not necessarily require an actual physical taking or condemnation of the property involved, but may consist of any interference with the rights of ownership, use, and enjoyment of property: Miller v. Beaver Falls, 368 Pa. 189, 196; Rosenblatt v. Pennsylvania Turnpike Commission, 398 Pa. 111, 145; Cleaver v. Board of Adjustment, supra, at page 372.

As the Court of Appeals of New York said in Forster v. Scott, 136 N. Y. 577, quoted with approval in Andress v. Zoning Board of Adjustment, supra, page 85, and Miller v. Beaver Falls, 368 Pa. 189, 197:

"What the legislature cannot do directly it cannot do indirectly, as the constitution guards as effectually

against the insidious approaches as an open and direct attack. Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, without legal process or compensation, it deprives him of his property, within the meaning of the constitution. All that is beneficial in property arises from its use and the fruits of that use, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession. It is not necessary, in order to render a statute obnoxious to the restraints of the constitution, that it must, in terms or in effect, authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment, or the power of disposition of the will of the owner".

The Commonwealth, in support of its position that there has been no physical appropriation or condemnation of the property involved and, therefore, that we are without authority to appoint viewers, cites such cases as May v. The County of Westmoreland, 98 Pa. Superior Ct. 488; Griffin v. City of New Castle, 88 Pa. Superior Ct. 439; Hermann v. North Pennsylvania Railroad Co., 270 Pa. 551; Philadelphia Parkway Opening, 295 Pa. 538. We believe that these cases no longer represent the law insofar as they support the Commonwealth's position. As was said in the footnote in Rosenblatt v. Pennsylvania Turnpike Commission, supra, at page 145: "We note that the law as to what constitutes a taking has been undergoing a radical change during the last few years. Whenever the lawful rights of an individual to the possession, use or enjoyment of his land are materially abridged or destroyed by reason of the exercise or purported exercise of the power of eminent domain, his property is generally considered to be taken pro tanto, and he is entitled to compensation: Cf. *Miller v. Beaver Falls*, 368 Pa. 189,

82 A. 2d 34; *Philadelphia Appeal*, 364 Pa. 71, 70 A. 2d 847; also *Sansom Street, Caplan's Appeal*, 293 Pa. 483, 143 A. 134, 20 Corpus Juris 566". To which may now be added Griggs v. Allegheny County, 402 Pa. 411, 414; Henry v. Allegheny County, 403 Pa. 272, 277.

It is our conclusion that the rights of petitioners to the free use and enjoyment of their property have been materially abridged, as has the power of disposition at the will of the owners, and that it follows that they are entitled to compensation, assuming they are able to establish such loss. This finding does not lead us to the conclusion that the Act of June 1, 1945, P. L. 1242, to which we have heretofore alluded, is unconstitutional, for we are mandated by the Statutory Construction Act, when a statute is reasonably capable of two constructions, one of which will sustain its constitutionality and the other invalidate it, to adopt the construction which will make it valid: Rosenblatt v. Pennsylvania Turnpike Commission, supra, page 137. Since we are permitted, under section 502(e) of the Eminent Domain Code hereinbefore recited, to appoint viewers when petitioners suffer compensable injury, although no declaration of taking has been filed, we are afforded the opportunity of considering this section in the light of the Act of 1945, and believe it to be appropriate to appoint viewers in the posture of the case now before us.

## ORDER

And now, to wit, October 8, 1965, the "Preliminary Objections in the Nature of Motion to Dismiss Petition and Discharge Viewers" are hereby overruled, denied and refused.

## CONCURRING OPINION

MONROE, J.—I concur with the conclusion, reached by the majority of this court, that petitioners have suffered a compensable injury. I arrive at that conclusion,

however, by a route that the majority did not traverse.

This proceeding appears to me to be an effort on the part of the Department of Highways to combine the authority granted by the Act of May 29, 1945, P. L. 1108, 36 PS §2391.1, et seq., authorizing the establishment of limited access highways, with the authority granted by the general State Highway Law of June 1, 1945, P. L. 1242, and thus arrive at a method for designating future locations for the two highway improvements in question, and yet deprive the property owners of the free and untrammeled use of their real estate pending a final determination by the department as to whether, if ever, it will utilize the subject ground for the improvements presently in contemplation. It is my opinion that the privileges granted by the respective Acts of Assembly mentioned may not be blended, except insofar as the acts themselves so designate. President Judge Biester, in his opinion for the majority of this court, quotes from a letter from the district engineer of the Department of Highways to petitioners, wherein the author of that letter directs petitioners to note that their land "has *not* been condemned". The contents of this letter are of no consequence or probative value in determining whether or not a condemnation has in fact taken place. In my opinion, there has been a full and complete condemnation of that portion of petitioners' lands which lies within the limits of the two limited access highways shown in the plans, as reference to the recorded State highway plans and the applicable law will show. The present intent of the highway department appears to be to by-pass the congested area of the Borough of Doylestown for through traffic traveling U. S. Route 202 (L. R. 152) and U. S. Route 611 (L. R. 151). The by-pass of U. S. Route 202 traffic appears to be contemplated by a limited access highway, referred to in the department's plan as L. R. 1062, Section No. 1-E/D, which I shall refer to herein-

after as Route No. 1062. The contemplated by-pass of U. S. Route 611 traffic is proposed to be accomplished by a limited access highway designated on the department's plans as L. R. No. 1068, Section No. 1-E/D, which I shall refer to hereafter as Route No. 1068.

An examination of the plans referred to is required. The plan referring to Route No. 1062 consists of five sheets, the first being the title sheet, and the remaining four being plans or drawings. The title sheet, bearing the signatures evidencing the approval of the Governor and the Secretary of Highways under the respective dates of October 28 and October 26, 1964, contains the following title:

"Drawings establishing limited access highway and designating future location and width of Leg. Route No. 1062 Section No. 1-E/D in Bucks County from Sta. 60+00 to Sta. 211+00 length 15,100 ft. 2.86 mi. This plan prepared pursuant to Section 2 of the Act of May 29, 1945, P. L. 1108, as amended and Section 219 of the Act of June 1, 1945, P. L. 1242".

The acknowledgment of the Secretary of Highways is adjacent thereto under date of October 26, 1964, and recites that the plan be recorded in accordance with section 6 of the Act of May 29, 1945, P. L. 1108, and section 219 of the Act of June 1, 1945, P. L. 1242.

The second sheet shows the location of Route 1062 and each terminus thereof, designated by the printed statement or legend "Limit of Establishment and Designation of Future Location of Limited Access Highway L. R. 1062, Section 1-E/D". The location of the route is shown on the plan only by a broad broken line.

Sheet three is a drawing of what appears to be one of the cloverleaf limited accesses between Routes 1062 and 1068. It shows, by legend, the "Limit of Establishment and Designation of Future Location of Limited Access Highway L. R. 1062, Section 1-E/D, Sta. 60+00" and clearly shows what are designated as

"Right of Way" lines, without limitation or restriction, except as to two small areas on the westerly side of the cloverleaf which are marked "Future Right of Way". These last designated lines do not appear to be within the boundaries of petitioners' real estate.

Sheet four shows the boundaries of a portion of Route 1062, all of which boundaries are marked "Right of Way", and none bear the designation of future rights-of-way limits.

Sheet five is to the same effect.

Turning to the plan in respect to Route 1068, the same consists of six sheets, the first being the title sheet and the remaining being plans or drawings. The title sheet bears the Governor's and Secretary of Highways' signatures on the same date as appears on the previously discussed plan. The acknowledgment of the Secretary of Highways is the same as on the previous mentioned plan. The legend, or title, is the same, except that it refers to Leg. Route 1068 from Sta. 8+00 to Sta. 250+60 and the length of 24,260 feet and 4.60 miles.

Sheet two of this plan also shows, by a heavy broken line, the location of Route 1068, each terminus of which is designated by the legends "Limit of Establishment and Designation of Future Location of Limited Access Highway L. R. 1068, Section 1-E/D" and showing the respective termini stations of 250+60 at one end and 8+00 at the other end.

Sheet three shows a portion of the right of way of Route 1068 and the cloverleaf intersection with Route 1062. The boundaries of the right-of-way are designated "Right of Way" without limitation or restrictions, with the exception that at the easterly end of the construction designated appears the legend "Limit of Establishment and Designation of Future Location of Limited Access Highway L. R. 1068, Section 1-E/D, Sta. 8+00" and with the further exception that at the

southerly corner of the drawing appears in two small areas the legends "Future Right of Way". These future right of way lines appear to be the same as those designated on sheet three of the plan for Route 1062.

Sheet four is a drawing of a portion of the right-of-way of Route 1068, the boundaries of which are designated by the legend "Right of Way" without restriction or indication of reservation for future use.

Sheet five is the same, as is sheet six.

As indicated above, the Act of June 1, 1945, P. L. 1108, 36 PS §2391.1, et seq., is the legislative authority to the Department of Highways to create limited access highways. It appears from the plans that the two routes will be virgin construction, and will not consist of the conversion of existing roads or highways into limited access highways. Section 2(b) of the act mentioned is the authorization to the Secretary of Highways to lay out new highways and declare the same to be limited access. This undoubtedly is the procedure the secretary is, in part, at least, attempting to follow. Section 8 of the Limited Access Highway Law, as amended, 36 PS §2391.8 provides that:

". . . the Secretary of Highways is hereby empowered to take property and pay damages therefor as herein provided. In townships such property shall be taken and damages paid therefor in the same manner as now or hereafter provided by law for the relocation or widening of State highways in townships."

The property in question is located in Doylestown Township and, therefore, the taking and the damages to be paid therefor are governed by section 210 of the State Highway Law of 1945, June 1, 1945, P. L. 1242, as amended, 36 PS §670-210: Cavalier Appeal, 408 Pa. 295, 299. It must be observed that section 8 of the Limited Access Highway Law states that the property is to be taken, and damages paid as "herein provided". It then provides that the taking and the payment of

damages shall be "as provided for the relocation and widening of State highways". The Limited Access Highway Law nowhere vests in the secretary the authority to designate the future location and width, of a limited access highway, and nowhere grants authority to the secretary or Governor to designate future widths of a proposed limited access highway, and then hold the use and enjoyment of the land within such widths from the owner until such future time as the secretary may, if ever, exercise discretion to utilize or abandon such widths. It is further to be noted that section 210 of the State Highway Law does not grant such authority to the secretary and Governor. Section 208 of the State Highway Law, 36 PS §670-208, does prohibit the payment of damages for buildings or improvements which shall be placed within the ultimate widths and lines which have been *established* for the construction of a State highway, but this is a far cry from what is attempted in the instant case, for here the position of the representatives of the secretary is not that the lines have been definitely established, but only contemplated. Indeed, the representatives of the secretary do not rely on this section, but rather on section 219 of the State Highway Law of 1945, which is not to be read into the Limited Access Highway Law because section 8 of such law limits the authority for the taking and payment of damages for limited access highway purposes to the provision of section 210 of the State Highway Law.

If my construction of the law is correct, the legend which appears on the title sheets must be construed as indicating that the intent is to presently establish the limited access highways and not to indicate an intention to establish such highways in future. Furthermore, since the various sheets of the drawings show the right of way lines of the proposed routes to be unrestricted as established right of way lines, except as to the small

portions designated "Future Right of Way" appearing on sheets 3 of the plans for the proposed routes, we must interpret the drawings as a present establishment of the right of way lines except as to the two small areas mentioned. In the Matter of Appointment of Viewers, 103 Pa. Superior Ct. 212, the Superior Court was confronted with a comparable problem of interpretation and stated, page 216:

"It is true that the cover of this description contains the words 'Ultimate Widths of Right of Way', but the body of the paper, which is the vital matter, contains nothing that marks the action of the Secretary of Highways as being only the establishment of the *ultimate* width and lines, rather than the establishment of the width and lines. . . ."

I do not consider the legend appearing on various of the sheets hereinabove mentioned "Limit of Establishment and Designation of Future Location of Limited Access Highways . . ." as detracting at all from my interpretation of the plans as affecting a present establishment of right of way lines, for such legends refer to only the termini of the various planned routes.

Section 210 of the highway law provides:

". . . the approval of such plan or plans by the Governor shall be considered to be the condemnation of an easement for highway purposes from all property within the lines marked as required for right of way and the condemnation of an easement of support or protection from all property within the lines marked as required for slopes".

The approval of the plans, therefore, constitutes the condemnation. Although section 402 (a) of the Eminent Domain Code provides that condemnation shall be effected only by the filing of a declaration of taking, nevertheless section 502 (e) provides that if there has been a compensable injury suffered, and no declaration of taking therefore has been filed, a condemnee

may file a petition for appointment of viewers. Therefore, it is my opinion that there has been an actual taking of petitioners' land with compensable injury, and that a jury of view has properly been appointed. The preliminary objections should be dismissed.