## First Presbyterian Church of York v. York City Council

*Judson E. Ruch,* for petitioner.

*Jay V. Yost,* Assistant Solicitor for City of York.

ATKINS, P. J., September 18, 1973.—This case arises under the provisions of the Act of June 13, 1961, P. L. 282, 53 PS §8001, et seq.

The First Presbyterian Church of York, Pa. (church), owns a tract of land numbered 225 East Market Street, in the City of York, which abuts other land of the church. On the tract numbered 225 is erected a building, formerly a dwelling house, which many persons, informed in the history of architecture, have said is a fine "Victorian 'Italian Villa' style house." The church applied to the proper authority for a permit to demolish the structure.

As required by the Act of June 13, 1961, that application was referred to the Board of Historical Architectural Review (board), appointed under the provisions of the Act of June 13, 1961, and an ordinance of the city. The ordinance also established a historical district which includes the premises at 225 East Market Street.

Pursuant to the requirements of the aforementioned legislation the board held meetings after it made a recommendation to the city council that the application to demolish the structure be denied. City council then adopted a resolution accepting the recommendation of the board.

An appeal from that action was taken to this court.

The following issues are raised in the appeal:

1. The refusal of the application to demolish constitutes an unlawful taking of the church's property without just compensation in violation of Article I, §10, of the Pennsylvania Constitution.

2. The refusal of the application violates the church's freedom of religion.

3. The board met secretly in violation of the so-called "Right to Know" Act of June 21, 1957, P. L. 392, 65 PS §251.

4. The board failed to consider:

a. The effect of the proposed change on the general and historical nature of the district.

b. The appropriateness of the exterior architectural features which can be seen from a public street only, and

c. The general design, arrangement, texture, material and color of the building and the relation of such features, to similar features of buildings in the district as required by section 10 in the ordinance.

5. The board failed to indicate what changes in the plans and specifications of the church could be made to protect the historical character of the district as required by section 11 of the ordinance.

6. The board in its report to council failed to set forth matters as required by section 12 of the ordinance which basically repeats the matters cited in sections 10 and 11, as above noted.

7. Council in its action failed to pass upon the matters cited in section 4 of the Act of June 13, 1961, which are substantially similar to the responsibilities imposed on the board by sections 10, 11 and 12 of the ordinance.

8. Council failed to consider the matters that sec-

tion 10 of the ordinance requires the board to consider and act upon.

Our disposition of the case makes it unnecessary to comment at length upon exceptions 4 through 8, except to say that the record does fail to disclose compliance by either the board or council with the requirements of the ordinance or of the statute referred to in those exceptions. That is, the board did not make findings required by that legislation.

It is not possible to pass upon the third exception since the record discloses no facts concerning the holding of a secret meeting.

Although counsel for the church refers to a violation of a constitutional guarantee of religious freedom in the second exception, he does not demonstrate how the presence or absence of the building affects the right of anyone to practice religious freedom.

There remains then only the first issue raised in the appeal to be considered. We note at the outset there is no general constitutional attack upon the Act of June 13, 1961, nor could there be. The right to enact and enforce this type of legislation has been upheld in numerous jurisdictions. See for example, Opinion of the Justices to the Senate (Mass.), 128 N.E. 2d 557; Trustees of Sailors' Snug Harbor v. Platt, 288 N.Y.S. 2d 314.

The real question then is whether the denial of the request of the church to demolish the building constitutes a taking of its property within the meaning of Article I, §10, of the Pennsylvania Constitution. Obviously, this is not a taking in the ordinary sense. However, the concept of taking has changed over the years as is illustrated by the following from Miller v. Beaver Falls, 368 Pa. 189, 196.

" 'Formerly it was limited to the actual physical ap-

propriation of the property or a divesting of title, but now the rule adopted in many jurisdictions and supported by the better reasoning is that when a person is deprived of any of certain rights in and appurtenant to tangible things, he is to that extent deprived of his property, and his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; "and it may be laid down as a general proposition, based upon the nature of property itself, that, *whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, pro tanto, taken, and he is entitled to compensation." '* [Cheves v. Whitehead, 1 F. Supp. 321]: 11 McQuillin, Municipal Corporations (3rd ed.) §32.26, p. 312." (Italics in original.)

While it is clear from this quotation that an interference with the use of property can constitute a taking, it is also true that not every interference with one's use of property amounts to a constitutional taking. The test laid down in Trustees of Sailors' Snug Harbor v. Platt, supra, seems to be both logical and fair. There the court said, at page 316:

"The criterion for commercial property is where the continuance of the landmark prevents the owner from obtaining an adequate return. A comparable test for a charity would be where maintenance of the landmark either physically or financially prevents or seriously interferes with carrying out the charitable purpose. In this instance the answer would depend on the proper resolution of subsidiary questions, namely, whether the preservation of these buildings would seriously interfere with the use of the property, whether the buildings are capable of conversion to

a useful purpose without excessive cost, or whether the cost of maintaining them without use would entail serious expenditure—all in the light of the purposes and resources of the petitioner."

Here, we are dealing with a noncommercial organization. Hence, the second part of the abovementioned text would be applicable.

We hereby adopt the test of the New York court and will remand this case to the city council for return to the Board of the Historical Architectural Review to take such testimony as will enable the board to make the necessary findings required under the Act of June 13, 1961, and the city ordinance, and to apply the constitutional test just cited, and to make a determination in accordance therewith.

## ORDER

And now, to wit, September 18, 1973, the record is hereby remanded to the Council of the City of York for further proceedings consistent with this opinion.